Hullon GRIGGS, Appellee,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY and District of Columbia Metropolitan Police, Appellees.

Douglas S. Haymans, Appellant.

No. 00–7108.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 2000.

Decided Dec. 1, 2000.

Gerard J. Stief, Associate General Counsel, Washington Metropolitan Area Transit Authority, argued the cause for appellant. With him on the briefs were Cheryl C. Burke, General Counsel, and Robert J. Kniaz, Deputy General Counsel.

Kim M. DiGiovanni argued the cause and filed the brief for appellee Hullon Griggs.

Before: EDWARDS, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In this interlocutory appeal, the court addresses whether an employee of the Washington Metropolitan Area Transit Authority ("WMATA") is absolutely immune from suit for negligent conduct arising during the course of making an arrest. As a result of his arrest, Hullon Griggs sued WMATA and Metro Transit Police Officer Douglas Haymans, as well as the D.C. Metropolitan Police Department, alleging in part that Officer Haymans negligently failed to control his police dog in the course of arresting Griggs. The district court denied Officer Haymans' motion to dismiss the complaint on the ground of absolute immunity, and, alternatively, for summary judgment on the ground that the complaint was barred by the one-year statute of limitations for assault and battery. Because the WMATA Compact, D.C.Code § 1–2431 et seq. (1981), provides that Officer Haymans' conduct in arresting Griggs

was subject to the laws applicable to a member of the D.C. Metropolitan Police Department, and because Officer Haymans' statute of limitations defense is meritless, we affirm.

## I.

According to the complaint,[1] the D.C. Metropolitan Police Department contacted the WMATA Transit Police in the early morning hours of May 26, 1996, for the assistance of a canine unit in responding to a "burglary two in progress" at the Madison Grocery store in Northwest, Washington, D.C. Metro Transit Police Officer Douglas Haymans and a police dog named "Buddy" responded to the scene. Upon their arrival, Officer Haymans released the dog into the Madison Grocery to search for the suspect. The dog located Hullon Griggs, who was asleep. When Griggs awoke, the dog's paws were on his head. As Griggs attempted to push the dog away, the dog began biting Griggs' right arm.

At this point, Officer Haymans entered the grocery store and ordered Griggs to stand and place his hands on his head. Griggs explained to Officer Haymans that the dog was biting him while he was on the ground, and that his efforts to push the dog away had failed. Officer Haymans pulled the dog away from Griggs and again ordered him to stand and place his hands over his head. Griggs complied immediately. Officer Haymans then released the dog and commanded him to attack Griggs. Griggs again made attempts to push the dog away, but the dog continued to attack him, inflicting multiple, serious wounds on Griggs' arms, legs, and torso. Instead of commanding the dog to stop, Officer Haymans ordered Griggs to stay still and allowed the dog to continue to attack him. Then, Officer Haymans ordered Griggs to

---

1. In reviewing the denial of a motion to dismiss on the ground of immunity, the court must treat the allegations of the complaint as true. *See United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (citing *Berkovitz v. United States,* 486 U.S. 531, 540, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)); *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979).

drop to his knees and place his hands on his head. Griggs complied, and Officer Haymans handcuffed him and pushed his head to the ground, during which time the dog continued to attack Griggs. Officer Haymans finally commanded the dog to stop his attacks. As Officer Haymans picked up Griggs, Griggs complained that the dog had injured him.

Officer Haymans then took Griggs outside of the grocery store, at which point a D.C. Metropolitan Police officer asked what had occurred inside. Officer Haymans responded that the dog "had not worked out in a while" and "he needed it." Griggs was transported to the Fourth District Headquarters by D.C. Metropolitan Police where Officer Haymans photographed Griggs' injuries and commented that the dog "got a good workout." Griggs was thereafter taken to D.C. General Hospital for treatment of the dog bites and then to the D.C. Jail for processing for unlawful entry, attempted theft, and burglary. Later, on two separate occasions while on his way to court, Griggs fainted and was transported to D.C. General Hospital. After his arraignment and release, Griggs continued to suffer from the injuries inflicted by the dog. On May 31, 1996, he called "911" and was transported to Howard County General Hospital where he was admitted for "infected hematoma secondary to dog bite" and where he remained hospitalized until June 5, 1996.

On May 24, 1999, almost three years later, Griggs filed a complaint in the D.C. Superior Court alleging negligence by WMATA and Officer Haymans for failure to control the police dog and by the D.C. Metropolitan Police Department for improper supervision. On June 15, 1999, the case was removed to the United States district court pursuant to § 81 of the Compact. See D.C.Code § 1–2431(81) (1981). As relevant here, WMATA and Officer Haymans moved to dismiss the complaint

on the ground of absolute immunity under § 80 of the Compact for claims involving governmental functions, see id. § 1–2431(80), and alternatively, for summary judgment on the ground that the complaint was barred by the one-year statute of limitations for assault and battery. See id. § 12–301(4). The district court denied the motion. On reconsideration, the district court granted WMATA's motion on the ground of absolute immunity, citing *Burkhart v. WMATA,* 112 F.3d 1207, 1216–17 (D.C.Cir.1997), but denied Officer Haymans' motion for reconsideration.

## II.

■ On appeal, Officer Haymans contends that the district court erred in rejecting his claim of absolute immunity because he was acting at all times within the scope of his employment and because his police activity constituted a "quintessentially governmental" function. He relies on the statement in *Beebe v. WMATA,* 129 F.3d 1283 (D.C.Cir.1997), that WMATA employees "enjoy absolute immunity from state-law tort actions when the conduct at issue falls 'within the scope of their official duties and the conduct is discretionary in nature.'" *Id.* at 1289. Officer Haymans also contends that the district court erred in ruling that the complaint was not barred under D.C.Code § 12–301(4), which provides a one-year statute of limitations for excessive force claims. Because Officer Haymans' statute of limitations contention is meritless inasmuch as Griggs' complaint sounds in negligence for which there is a three-year statute of limitations, see id. § 12–301(8), as well as in intentional tort for which there is a one-year statute of limitations, see *McCracken v. Walls–Kaufman,* 717 A.2d 346, 350–53 (D.C.1998); *Etheredge v. District of Columbia,* 635 A.2d 908, 918 (D.C.1993),[2] we turn to Officer Haymans' immunity claim.

---

2. The statute of limitations contention is properly before the court in this interlocutory appeal. *See KiSKA Const. Corp.–U.S.A. v. WMA-* *TA,* 167 F.3d 608, 611 (D.C.Cir.1999); *Gilda Marx, Inc. v. Wildwood Exercise, Inc.,* 85 F.3d 675, 679 (D.C.Cir.1996).

In *Beebe,* the court addressed whether WMATA employees have immunity when WMATA itself is immune because the alleged tort occurred during the exercise of governmental or discretionary functions. *See Beebe,* 129 F.3d at 1288. Beebe, a former WMATA employee, filed suit against his former supervisors for, among other things, breach of contract and constructive discharge, fraud, gross negligence, and defamation, in connection with their implementation of an office reorganization that expanded Beebe's responsibilities. *See id.* at 1286. As a result of his unsatisfactory performance in the new position, his supervisors eliminated that position and created a new equally-ranked position. *See id.* Beebe was not selected for that position, however, but was instead selected for a lesser position, causing his office ranking to drop. *See id.* Because § 80 of the Compact, which provides immunity to WMATA only where torts are committed in the course of governmental functions, is silent on the scope of WMATA employees' immunity when WMATA itself is immune, the court looked to the federal common law. *See id.* at 1288. Applying the distinction between discretionary and ministerial functions, as articulated in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the court held that the WMATA supervisors, whom Beebe did not allege had acted outside the scope of their duties, were immune from suit insofar as their actions in implementing the office reorganization, "lying at the core of [their] official responsibilities," were discretionary in nature. *Beebe,* 129 F.3d at 1289. The court also observed that:

> not all intentional or malicious torts committed in the normal course of employment necessarily fall within the scope of official duties. Officials "exceed the outer perimeters of their responsibilities, and act manifestly beyond their line of duty," for example, "when they resort to physical force to compel the

obedience of their managerial subordinates ... or when they use false threats of criminal charges to coerce an employee into resigning."

*Id.* (quoting *McKinney v. Whitfield,* 736 F.2d 766, 771–72 (D.C.Cir.1984), and citing *Bishop v. Tice,* 622 F.2d 349, 359 (8th Cir.1980)).

The district court applied *Beebe's* instruction to look to federal common law when it concluded, under *Westfall,* that although Griggs conceded that Officer Haymans was acting within the scope of his employment, an individual transit officer's conduct in making an arrest is a ministerial function for which he may be held liable. The district court also looked to *Dellums v. Powell,* 566 F.2d 216 (D.C.Cir.1977). In *Dellums* the court observed that *Carter v. Carlson,* 447 F.2d 358, 366 (D.C.Cir.1971), *rev'd in part on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), as well as *Wade v. District of Columbia,* 310 A.2d 857, 860 (D.C.1973), "recognized that the arrest function involved discretion in the ordinary sense but not discretion in the policymaking sense, which is the interest protected by municipal immunity." *Dellums,* 566 F.2d at 223 n. 25. The court had explained in *Carter,* that "the law is clear that an arresting officer has no immunity from suit for torts committed in the course of making an arrest", 447 F.2d at 362–63, even though "a high degree of discretion is clearly involved in deciding when and how to make an arrest...."[3] *Id.* at 363 n. 9. Accordingly, the district court reasoned that, absent federal common law dictating otherwise, "it is inappropriate to conflate discretionary police activity, from which liability WMATA is shielded, with ministerial arrest activity, from which liability individual police officers are not necessarily shielded." The district court ruled that "[t]he facts as alleged [in the complaint]

---

**3.** In *Carter,* the plaintiff sued a member of the D.C. Metropolitan Police Department for assault and battery when the officer allegedly

beat him after arresting him without probable cause. *See* 447 F.2d at 360–61.

support the inference that [Officer Haymans] may have crossed the line from official duty to illicit brutality or otherwise performed negligently in his supervision and use of [the dog]," and thus Officer Haymans was not entitled to absolute immunity.[4]

■ The correctness of the district court's legal conclusion is demonstrated upon consideration of the WMATA Compact itself. That Compact, executed by Virginia, Maryland, and the District of Columbia, and approved by Congress in 1966, originally gave the WMATA transit police very limited police powers, reserving the vast majority of police work for each member jurisdictions' own police forces. *See* D.C.Code § 1–1431(76)(1967); *see also Hall v. WMATA*, 468 A.2d 970, 971 (D.C. 1983). However, in 1976 Congress amended § 76, expanding the police powers of the transit police so that they supplemented area police forces and supervised bus and rail service. Section 76(b) provides in relevant part that:

> [a] member of the Metro Transit Police shall have the same powers, including the power of arrest, and shall be subject to the same limitations, including regulatory limitations, in performance of his or her duties as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his or her duties.

D.C.Code § 1–2431(76(b)) (1981). Thus, in the District of Columbia, a Metro Transit Police officer engaged in a criminal investigation and an arrest has the same powers and limitations as a member of the District of Columbia Metropolitan Police Department, and consequently has only qualified immunity for his torts.

The court explained in *Biscoe v. Arlington County*, 738 F.2d 1352, 1362 (D.C.Cir.

1984), that in the District of Columbia, "both official and governmental immunity depend on the ministerial-discretionary dichotomy." A ministerial function is one that "connotes the execution of policy as distinct from its formulation." *Id.* (quoting *Elgin v. District of Columbia*, 337 F.2d 152, 154–55 (D.C.Cir.1964)). Thus, conducting felony stops and felony pursuits are ministerial, not discretionary, acts because they are day-to-day operational matters, not matters related to planning and policy. *See id.* A police officer's conduct in connection with conducting an investigation with an eye toward making an arrest is ministerial, even if his on-the-scene decision to act originally, e.g., to stop a car, is discretionary. *See id.* In reaching this conclusion, the court noted that a police officer is constrained by both regulations and clearly established policies and standards such that there is no need to be concerned that tort liability for such actions would "pose threats to the quality and efficiency of government." *Id.* (quoting *Spencer v. General Hosp. of D.C.*, 425 F.2d 479, 482 (D.C.Cir.1969)). In contrast, a discretionary act is one for which an officer is immune: "If policy considerations were involved and no statutory or regulatory requirements limited the exercise of policy discretion, ... immunity would bar suit." *Id.* at 1362 (quoting *Chandler v. District of Columbia*, 404 A.2d 964, 966 (D.C.1979)). Finally, the court explained that:

> there are certain decisions made in the exercise of the discretionary functions of government for which there is no reason to believe a jury would render a sounder decision than those officials chosen, qualified, and prepared to make them. It is these that are labeled "discretionary" and which constitute policy decisions deemed immune from suit because

---

4. In originally denying the motion to dismiss on the ground of immunity, the district court noted that "the parties have not proffered evidence of the standard of permissible police action for the court to determine, as a matter of law, whether Officer Haymans acted be-

yond the bounds of his official duties." Assuming the parties had done so, the district court concluded that the allegations in the complaint, if true, would "preclude dismissal at this phase [of the case]."

there is no legal standard by which a judge or jury could gauge their arbitrariness and capriciousness or lack thereof.

*Id.* at 1363 (quoting *Chandler v. District of Columbia,* 404 A.2d at 966).

 A member of the D.C. Metropolitan Police Department, therefore, is not absolutely immune from suit for his tortious conduct. *See McCarthy v. Kleindienst,* 741 F.2d 1406, 1409 (D.C.Cir.1984) (citing *Apton v. Wilson,* 506 F.2d 83, 90–95 (D.C.Cir.1974)). It necessarily follows that while § 80 of the Compact cloaks WMATA itself with absolute immunity for torts arising in the exercise of governmental functions, under § 76(b) of the Compact, WMATA's Metro Transit Police officers, like members of the D.C. Metropolitan Police Department, are not able to invoke such absolute immunity as a bar to suit for their torts in the District of Columbia. Officer Haymans can find no solace in cases allowing a Metro Transit Police officer to invoke absolute immunity for alleged false arrest, false imprisonment, and malicious prosecution when the officer had probable cause to make the arrest and acted with "a good faith, reasonable belief" that the arrestee had violated the law. *Stebbins v. WMATA,* 495 A.2d 741, 743 (D.C.1985) (quoting *Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1104 (D.C. 1983)); *see also Dant v. District of Columbia,* 829 F.2d 69, 75 (D.C.Cir.1987); *McCarthy,* 741 F.2d at 1413. Even though an officer in that circumstance is engaged in governmental functions and is acting within the scope of his responsibilities, the right to invoke absolute immunity evaporates when the conduct is "manifestly excessive," using means to accomplish one's responsibilities that are "beyond the outer perimeter of [one's] authority." *McKinney,* 736 F.2d at 770–71 (and cases cited therein). While Griggs' complaint does not expressly allege *in haec verba* that Officer Haymans' conduct exceeded the "outer perimeters" of his official duties, *Beebe,* 129 F.3d at 1289, as the district court noted, the factual allegations in the complaint are to the same effect. Griggs

has alleged that Officer Haymans not only failed properly to train his "vicious" dog, but he failed to control his dog, instead commanding the dog to attack Griggs after Griggs had complied with Officer Haymans' order to stand and place his hands on his head, and failing to command the dog to cease its attack. The use of a police dog to locate a suspected burglar is far different from the use of a police dog to attack a suspected burglar who has submitted to police authority.

Officer Haymans has two responses, neither of which is availing. First, he contends that reliance on *Dellums* and *Carter* is misplaced because those cases involved "the discretionary standard associated with both the Federal Tort Claims Act and District of Columbia law, and not the broader governmental/proprietary standard mandated by § 80." Officer Haymans, however, misreads the court's recent decision in *Beebe.* Although the Federal Tort Claims Act was not at issue, the court in *Beebe* drew upon the precedent established by the Act in addressing § 80 of the WMATA Compact and endorsed the discretionary/ministerial dichotomy employed in *Dellums* and *Carter.* *See Beebe,* 129 F.3d at 1287 (citing *Burkhart,* 112 F.3d at 1216). The district court, therefore, could properly invoke the distinction long-recognized by the court, *see McKinney,* 736 F.2d at 769–71, between discretionary activity illustrated in *Beebe,* that cannot result in tort liability for WMATA, and ministerial arrest activity illustrated in *Carter,* that may result in tort liability for a Metro Transit Police officer. Moreover, unlike the situation confronting the court in *Beebe,* where the Compact was silent as to the immunity of the WMATA employees being sued, the district court was instructed by Congress in § 76(b) of the Compact to look to the law applicable to D.C. Metropolitan Police officers in determining whether Officer Haymans was cloaked with the same immunity as WMATA.

Second, contrary to Officer Haymans' contention at oral argument, *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), does not undermine the propriety of drawing distinctions between types of discretionary conduct. In *Gaubert*, the Supreme Court held that for purposes of the Federal Tort Claims Act, discretionary activity can include operational activities and is "not confined to the policy or planning level." 499 U.S. at 325, 111 S.Ct. 1267. Thus, a suit against federal bank officials for negligently advising and overseeing the operations of a thrift institution was barred by immunity. *See id.* at 333, 111 S.Ct. 1267. This result followed, the Court said, because the bank officials were authorized by statute to provide advice and oversight in a manner that left room for the exercise of political, social, or economic choice. *See id.* at 324–26, 111 S.Ct. 1267. While the determination of the nature of an activity under the Compact is a question "of federal law," *Burkhart*, 112 F.3d at 1216 (quoting *Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C.Cir.1987)), under § 76(b) of the Compact Officer Haymans was vested only with the powers and limitations of a D.C. Metropolitan Police officer when he responded to a call for assistance from the D.C. Metropolitan Police Department, and thus the discretionary/ministerial distinctions noted in *Biscoe*, 738 F.2d at 1363, continue to apply.

Accordingly, we affirm the district court's order denying Officer Haymans' motion to dismiss the complaint on absolute immunity and statute of limitations grounds.[5]

5. Because the appeal involves only the issue of Officer Haymans' entitlement to absolute immunity, we do not reach the issue of any claim that he may have to qualified immunity.