Richard W. **BEEBE**, Appellant

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.,**
Appellees

No. 95–7293.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 30, 1997.

Decided Nov. 28, 1997.

Richard W. Beebe, appearing pro se, argued the cause and filed the briefs.

Bruce P. Heppen argued the cause for appellees. With him on the briefs were Carol B. O'Keeffe and Robert J. Kniaz. David R. Keyser, Gerard J. Stief and Robert L. Polk entered appearances for appellees.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

TATEL, Circuit Judge:

In this tort and contract action, we again examine the scope of WMATA's sovereign immunity, as well as the immunity of its employees. Because the torts alleged here arose from policy decisions made during the reorganization of a WMATA department, we agree with the district court that WMATA is protected by sovereign immunity. Applying federal common law, we also hold that WMATA officials, when exercising discretionary functions and acting within the scope of their official duties, enjoy immunity from tort liability. We agree with the district court that the contract claims lack merit.

I

In 1966, acting pursuant to the Compact Clause of the Constitution, U.S. CONST. art. I, § 10, cl. 3, Congress approved the Washington Metropolitan Area Transit Authority Compact between Maryland, Virginia, and the District of Columbia to deal with growing traffic problems in the Washington area. *See* Pub.L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C.CODE ANN. § 1–2431 (1992)); H. REP. NO. 89–1914, at 5–6 (1966). Responsible for creating a coordinated public transportation system for the re-

gion, WMATA now operates an extensive Metrobus and Metrorail system running throughout Northern Virginia, the District, and two Maryland counties. We have summarized WMATA's history and its relationship to Congress in earlier decisions. *See, e.g., Dant v. District of Columbia,* 829 F.2d 69, 71, 74 (D.C.Cir.1987); *Morris v. WMATA,* 781 F.2d 218, 219, 222 (D.C.Cir.1986).

Appellant Richard W. Beebe works for WMATA as an attorney, having served in both the Office of General Counsel and the Office of Procurement. In 1989, he became a Construction Engineer Negotiator in what was then the Office of Procurement's Final Decisions and Disputes Section, headed by appellee Narinder Kumar. In that job, Beebe investigated and analyzed contract claims and drafted final contracting decisions.

In 1992, by which time Beebe had reached a rank of TA–24, WMATA's Board of Directors approved a reorganization of the Office of Procurement, appointing appellee Robert Bearinger to oversee its implementation. The reorganization shrank the Final Decisions and Disputes Section from thirteen to six positions and transferred it to a new Construction Contract Management division. In this new office, Beebe's duties expanded from managing a single stage of the contracting process to "cradle-to-grave" contract administration.

During several personnel policy meetings with Bearinger and others and in a separate memorandum to Bearinger, Kumar criticized Beebe's performance, suggesting that he was unqualified for his broader responsibilities and that Beebe should return to the Office of General Counsel. Bearinger then abolished Beebe's job, replaced it with a new TA–24 Contract Administrator position, and appointed Kumar to head a selection committee to fill the new position. Beebe applied, but the committee selected him instead for a TA–22 Contract Administrator position.

In July, 1994, Beebe filed a ten-count complaint in the U.S. District Court for the District of Columbia, asserting claims for breach of contract/promissory estoppel (count 1); constructive discharge (count 2); misrepresentation (count 3); fraud (count 4);

gross negligence in the formulation and implementation of the selection process for the TA–24 Contract Administrator position (count 5); negligent entrustment (count 6); defamation of character (count 7); wrongful interference with employment relationship (count 8); breach of the covenant of good faith and fair dealing (count 9); and intentional infliction of emotional harm (count 10). Beebe named WMATA and Bearinger in counts one, two, three, four, five, nine, and ten; he named Kumar in counts two, seven, eight, nine, and ten; and he named only WMATA in count six.

Relying on a magistrate judge's recommendations, the district court dismissed the tort claims against WMATA and the individual defendants on sovereign immunity grounds. The district court also granted summary judgment for defendants on the breach of contract/promissory estoppel claim, and dismissed the remaining contract claims. In this appeal by Beebe, we review the dismissal of counts two through ten, as well as the summary judgment on count one *de novo,* applying the same standards used by the district court. *Wilson v. Pena,* 79 F.3d 154, 160 n. 1 (D.C.Cir.1996). Claims are not to be dismissed " 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Alicke v. MCI Communications Corp.,* 111 F.3d 909, 912 (D.C.Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

## II

Before considering the merits of Beebe's appeal, we must deal with WMATA's assertion that Beebe failed to exhaust his administrative remedies. The Compact requires employees to submit all unresolved "labor dispute[s]" to arbitration. D.C.CODE

ANN. § 1–2431(66)(c). Employees must exhaust these procedures before filing suit. *Sanders v. WMATA,* 819 F.2d 1151, 1158 (D.C.Cir.1987). Employees like Beebe who are members of the Office and Professional Employees International Union, Local No. 2, can satisfy this requirement by exhausting the grievance procedures contained in the union's collective bargaining agreement with WMATA.

■ Before filing his complaint in this case, Beebe initiated the collective bargaining agreement's grievance procedures, progressing through the first two of its four steps. Not until four days after filing suit, however, did he initiate a "step three" grievance. While this would ordinarily bar Beebe from pursuing this litigation, WMATA does not contest Beebe's assertion that notwithstanding the collective bargaining agreement's requirement that it respond to a step three grievance within ten days, Article XX, Agreement Between WMATA and the Office and Professional Employees International Union, Local No. 2, it has never answered his step three filing. Under these circumstances, WMATA has waived its exhaustion defense. *Cf. Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) ("[W]hen the conduct of the employer amounts to a repudiation ... the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action.") (citations omitted). We thus turn to Beebe's tort claims.

### III

■ In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities. *Morris,* 781 F.2d at 219; *see also Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 49–50, 115 S.Ct. 394, 405, 130 L.Ed.2d 245 (1994). Section 80 of the Compact waives this immunity for torts "committed in the conduct of any proprietary function," while retaining immunity for torts committed by its agents "in the performance of a governmental function." D.C.CODE ANN. § 1–2431(80).

■ To distinguish governmental from proprietary functions, we ask whether the activity amounts to a "quintessential" governmental function, like law enforcement. *Burkhart v. WMATA,* 112 F.3d 1207, 1216 (D.C.Cir.1997). If so, the activity falls within the scope of WMATA's sovereign immunity. *Id.* (citing *Dant,* 829 F.2d at 74). Because it is difficult to distinguish between public and private sector functions with any precision beyond obviously public activities like law enforcement, *Dant,* 829 F.2d at 74, the immunity question often turns on whether the activity is "discretionary" or "ministerial," a dichotomy employed by the Federal Tort Claims Act. *Burkhart,* 112 F.3d at 1216. To determine whether a function is discretionary, and thus shielded by sovereign immunity, we ask whether any " 'statute, regulation, or policy specifically prescribes a course of action for an employee to follow.' " *Cope v. Scott,* 45 F.3d 445, 448 (D.C.Cir.1995) (quoting *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)). If no course of action is prescribed, we then determine whether the exercise of discretion is "grounded in 'social, economic, or political goals.' " *Id.* (quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1274). If so grounded, the activity is "governmental," thus falling within section 80's retention of sovereign immunity.

Although employment decisions are not quintessential governmental functions—after all, private entities also hire and fire employees—we held in *Burkhart* that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart,* 112 F.3d at 1217. The Compact confers broad powers on WMATA to "[c]reate and abolish offices, employments and positions ... provide for the qualification, appointment, [and] removal ... of its ... employees, [and][e]stablish, in its discretion, a personnel system based on merit and fitness." D.C.CODE ANN. §§ 1–2431(12)(g) and (h); *see Burkhart,* 112 F.3d at 1217. Employment decisions require "consideration of numerous factors, including budgetary constraints, public perception, economic conditions, 'individual backgrounds, office diversity, experience and employer intuition.' "

*Id.* (quoting *Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir.1995)).

■ Applying these standards, we think WMATA's appointment of Bearinger to oversee the reorganization of the Office of Procurement as well as later actions by Bearinger and Kumar in the course of the reorganization were discretionary activities. Beebe does not allege that Bearinger or Kumar were told precisely how to structure the new department, which positions to create or abolish, or whom to hire or retain. Of course, not every action connected in some way to an employment decision amounts to a discretionary function. But all actions challenged by Beebe involved a large measure of choice, and we perceive no distinction between the discretion here and the hiring, training, and supervision of bus operators at issue in *Burkhart.* If anything, the activity in this case—reorganizing an entire office—involved even greater degrees of political, social and economic considerations. Agreeing with the district court that WMATA is therefore immune from Beebe's tort claims, including the alleged intentional torts, *cf. Gray v. Bell,* 712 F.2d 490, 508 (D.C.Cir. 1983) (barring intentional tort claim because conduct fell within discretionary function exception), we affirm the dismissal of counts three through six and ten against WMATA.

## IV

Because Beebe also asserts tort claims against Bearinger and Kumar in their individual capacities (counts 3–5, 7, 8, and 10), we must determine whether, as the district court held, they too have immunity from suit. The scope of immunity of WMATA employees for torts committed in the course of governmental or discretionary functions is a road not well traveled.

Section 80 of the Compact provides that the "exclusive remedy" for any action for which WMATA is liable "shall be by suit against the Authority." D.C.Code Ann.§ 1–2431(80). In other words, for torts committed in the course of proprietary or ministerial functions, WMATA is liable and its employees immune. The Compact is silent on the question this case presents: whether WMATA employees have immunity from suit where WMATA itself has immunity because the alleged torts occurred in the exercise of governmental or discretionary functions.

■ To resolve this issue, we must first determine which law to rely on—those of the three signatories or federal common law? Where Congress wanted state law to govern a question under the WMATA Compact, such as in proprietary tort actions, it said so explicitly. *See* D.C.Code Ann.§ 1–2431(80) ("The Authority shall be liable for ... torts ... committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory...."). Where Congress has not so provided, federal law governs the interpretation of Compact terms. *Cuyler v. Adams,* 449 U.S. 433, 440, 101 S.Ct. 703, 708, 66 L.Ed.2d 641 (1981) ("[W]here Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause [of the Constitution]."). We thus regularly look to federal law when distinguishing between governmental and proprietary functions. *See, e.g., Burkhart,* 112 F.3d at 1216; *Sanders,* 819 F.2d at 1154. Although the issue in this case requires us to interpret no specific Compact terms, but rather to fill in a gap left by those terms, we think the issue remains essentially federal, resolvable pursuant to federal common law. *Cf. Old Town Trolley Tours v. WMATC,* 129 F.3d 201, 204 (D.C.Cir.1997).

While perhaps not the proper standard for interpreting *every* interstate compact, federal common law is particularly appropriate in WMATA's case. Not only does the Compact have its roots in congressionally authorized studies, *see* H. Rep. No. 89–1914, at 3–4 (1966), but "Congress played a particularly active role" in WMATA's creation, *Morris,* 781 F.2d at 222. From the very outset, the federal government has contributed significantly to the construction and operation of WMATA's transportation system. *Id.* at 225. Moreover, although WMATA operates in three jurisdictions, it runs its core policymaking functions in one central District of

Columbia headquarters. Resorting to the laws of the individual signatories could expose WMATA policymakers to different, possibly inconsistent immunity rules, a result that would run counter to the uniform interpretation of WMATA's governmental immunity, a uniformity which results from our reliance on federal law. Although *Dant*'s discussion of official immunity refers by analogy to District of Columbia cases, nothing in that decision conflicts with the proposition that federal common law determines whether WMATA officials have immunity when exercising governmental functions.

■ For the appropriate federal common law standard, we look to *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). There, the Supreme Court held that federal officials enjoy absolute immunity from state-law tort actions when the conduct at issue falls "within the scope of their official duties *and* the conduct is discretionary in nature." *Id.* at 297–98, 108 S.Ct. at 584. Congress has since overturned *Westfall* as it applies to federal employees, *see* Federal Employees Liability Reform and Tort Compensation Act, Pub.L. No. 100–694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. §§ 2671–80 (1994)), but *Westfall* remains the common law rule, *see Mangold v. Analytic Servs., Inc.,* 77 F.3d 1442, 1447 n. 4 (4th Cir.1996) ("[a]t federal common law, absolute official immunity" still governed by *Westfall*).

■ Although *Westfall* places the burden of establishing immunity on the official, *Westfall,* 484 U.S. at 299, 108 S.Ct. at 585, Beebe has failed even to allege that Bearinger and Kumar acted outside the scope of their official duties, *Westfall*'s first prong. By Beebe's own account, all actions he challenges related directly to the office reorganization, thus lying at the core of Bearinger and Kumar's official responsibilities. Even the alleged intentional torts (fraud and intentional infliction of emotional harm) as well as those Beebe alleges were motivated by personal animus (defamation and interference with his employment relationship) occurred in the course of the reorganization. *Cf. Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (plurality opinion) ("The fact that the action here taken was within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint."); *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896) (Harlan, J.). To be sure, not all intentional or malicious torts committed in the normal course of employment necessarily fall within the scope of official duties. Officials "exceed the outer perimeters of their responsibilities, and act manifestly beyond their line of duty," for example, "when they resort to physical force to compel the obedience of their managerial subordinates," *McKinney v. Whitfield,* 736 F.2d 766, 771–72 (D.C.Cir. 1984), or when they use false threats of criminal charges to coerce an employee into resigning, *Bishop v. Tice,* 622 F.2d 349, 359 (8th Cir.1980). None of Beebe's allegations comes even close to these extremes. He alleges nothing more than that Bearinger implemented the reorganization improperly. His allegations about Kumar's personal animus are conclusory.

Because we have already determined that Bearinger and Kumar were engaged in discretionary functions—*Westfall's* second prong—they enjoy immunity from Beebe's tort allegations. We thus affirm the district court's dismissal of counts three through five, seven, eight, and ten against Bearinger and Kumar.

## V

■ This brings us finally to Beebe's claims for breach of contract/promissory estoppel (count 1), constructive discharge (count 2), and breach of the covenant of good faith and fair dealing (count 9), asserted against WMATA, Bearinger, and Kumar. Section 80 of the Compact waives WMATA's sovereign immunity for contractual disputes. D.C.CODE ANN.§ 1–2431(80). Because the Compact makes WMATA the exclusive defendant where WMATA is liable, *id.,* Bearinger and Kumar cannot be sued for any contractual claims. As for WMATA, we find no basis for questioning the district court's grant of summary judgment on the breach of contract/promissory estoppel count or its dismissal of the remaining counts.

Beebe claims that WMATA is contractually bound by statements in its personnel manual. Although like any District of Columbia employer WMATA can bind itself contractually in a personnel manual, *see Sisco v. GSA Nat'l Capital Fed. Credit Union,* 689 A.2d 52, 55 (D.C.1997) (holding that "assurances by an employer in a personnel or policy manual distributed to all employees that are clear enough in limiting the right to terminate to specific causes or events will overcome the presumption of at-will employment"), Beebe points to no statement of policy in WMATA's manual that could possibly create such a contract. He cites policies 1.2 and 2.1, which encourage internal promotion and responsible supervision, but neither is "clear enough" to overcome the presumption that he was employed at-will, *Id.*

Beebe's remaining contract claims also fail: his covenant of good faith and fair dealing claim, because it depends upon the existence of an enforceable contract; and his constructive discharge claim, because he makes no allegation that WMATA made working conditions so onerous that he had to quit, *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights,* 515 A.2d 1095, 1101 (D.C.1986) (constructive discharge occurs "when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary quit"). Indeed, Beebe told us at oral argument that he remains employed by WMATA. Failing to pursue his claim of promissory estoppel in this court, Beebe has waived it. *Terry v. Reno,* 101 F.3d 1412, 1415 (D.C.Cir. 1996), *cert. denied,* — U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997).

## VI

We affirm the district court's grant of appellees' motion for summary judgment on the breach of contract/promissory estoppel count and of their motion to dismiss the remainder of Beebe's complaint.

*So ordered.*