United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 7, 2002 Decided July 12, 2002 

 No. 01-7092

 Keith Winston Watters, 
 Appellee

 v.

 Washington Metropolitan Area Transit Authority, 
 Appellant

 Brenda Blocker, 
 Third-Party Defendant-Appellee

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 93cv01434)

 Vincent A. Jankoski argued the cause and filed the briefs 
for appellant. With him on the briefs were Cheryl C. Burke, 
Robert J. Kniaz, and Gerard J. Stief.

 Nathaniel H. Speights argued the cause for appellee Keith 
Winston Watters.

 Thomas W. Beimers filed the brief for third-party defen-
dant-appellee Brenda Blocker.

 Before: Tatel and Garland, Circuit Judges, and Williams, 
Senior Circuit Judge.

 Opinion for the Court filed by Circuit Judge Garland.

 Garland, Circuit Judge: Keith Watters, an attorney, 
brought suit against the Washington Metropolitan Area Tran-
sit Authority (WMATA) for failing to honor an attorney's lien 
on the proceeds of a settlement between WMATA and Wat-
ters' former client. We hold that WMATA's sovereign immu-
nity bars Watters' lawsuit.

 I

 Approximately ten years ago, Watters represented Brenda 
Blocker in a personal injury action against WMATA in the 
District of Columbia. Under the retainer agreement signed 
by Blocker, Watters was entitled to 33.3% of any recovery 
obtained in the case. After three and a half years of investi-
gation and settlement negotiations, Blocker, apparently dis-
satisfied with the $55,000 compromise then under discussion 
between Watters and WMATA, discharged Watters. That 
same day, February 19, 1992, Blocker retained Bonita Rudd 
as her new attorney. On February 26, Watters sent 
WMATA a letter asserting an attorney's lien, in the amount 
of one-third of $55,000, on any recovery Blocker might obtain 
from the Authority. WMATA did not respond. Rudd settled 
Blocker's case for $60,000 on April 3, 1992, and WMATA, 
disregarding Watters' purported lien, paid the full amount to 
Blocker and Rudd.

 Watters brought the instant suit against WMATA for 
breach of contract and "breach of duty to enforce equitable 
lien." Compl. at 5. The district court dismissed Watters' 
breach of contract claim, but after a trial found WMATA 

liable for failing to honor Watters' lien. WMATA appeals 
from the judgment against it.1

 II

 On appeal, WMATA contends that sovereign immunity 
precludes Watters from asserting or enforcing an attorney's 
lien against funds in its possession.2 WMATA was created by 
an interstate compact entered into by the District of Colum-
bia and the states of Maryland and Virginia.3 As we have 
repeatedly held, the three signatories conferred each of their 
respective sovereign immunities, including the Eleventh 
Amendment immunity of the two states, upon the Authority.4

 There is no question that the three signatories' sovereign 
immunity extends to suits for breach of attorney's liens. The 
Eleventh Amendment gives the two states immunity from 
suit in federal court, see California v. Deep Sea Research, 
Inc., 523 U.S. 491, 501-02 (1998), and judicial decisions in all 

__________
 1 WMATA also filed a third-party complaint against Blocker and 
Rudd, which the district court dismissed. WMATA appeals that 
dismissal as well, but our determination that WMATA is immune 
from liability to Watters moots the Authority's third-party claim.

 2 WMATA did not raise this defense in its answer to Watters' 
complaint, but did raise it both in subsequent filings in the district 
court and in its opening brief in this court. Sovereign immunity is 
a jurisdictional issue that may be raised at any time during the 
course of litigation. Burkhart v. Washington Metro. Area Transit 
Auth., 112 F.3d 1207, 1216 (D.C. Cir. 1997).

 3 On November 6, 1966, Congress consented to the WMATA 
Compact and enacted it for the District of Columbia. Washington 
Metro. Area Transit Auth. Compact, Pub. L. No. 89-774, 80 Stat. 
1324 (1966). The Compact is codified at D.C. Code s 9-1107.01; 
Md. Code, Transp. s 10-204; and Va. Code ss 56-529,-530.

 4 See, e.g., Jones v. Washington Metro. Area Transit Auth., 205 
F.3d 428, 432 (D.C. Cir. 2000); Beebe v. Washington Metro. Area 
Transit Auth., 129 F.3d 1283, 1287 (D.C. Cir. 1997); Sanders v. 
Washington Metro. Area Transit Auth., 819 F.2d 1151, 1154 (D.C. 
Cir. 1987); Morris v. Washington Metro. Area Transit Auth., 781 
F.2d 218, 224-25 (D.C. Cir. 1986).

three jurisdictions indicate that each has sovereign immunity 
against the imposition and enforcement of equitable liens (and 
against related devices like garnishment5) in their own courts 
as well.6 Thus, unless WMATA's sovereign immunity has 
been waived, the district court lacks jurisdiction to enter a 
judgment against the Authority. See Burkhart v. Washing-
ton Metro. Area Transit Auth., 112 F.3d 1207, 1216 (D.C. Cir. 
1997) (noting that "sovereign immunity claims are jurisdic-
tional").

 We may find a waiver of sovereign immunity "only where 
stated by the most express language or by such overwhelm-
ing implications from the text as will leave no room for any 
other reasonable construction." Morris v. Washington Met-
ro. Area Transit Auth., 781 F.2d 218, 221 (D.C. Cir. 1986) 

__________
 5 To "garnish" is to attach property (often wages) of a debtor that 
is in the possession of a third party in order to satisfy a debt. 
Black's Law Dictionary 689 (7th ed. 1999). See Knight v. United 
States, 982 F.2d 1573, 1578 (Fed. Cir. 1993) (holding that "unless 
the United States has submitted itself to such state law, an attorney 
lien statute, like a state garnishment statute, has no force or effect 
against it and places no restraints on the government's payment of 
its obligations to another, including the payment of wages").

 6 See Grunley Constr. Co. v. District of Columbia, 704 A.2d 288, 
290 (D.C. 1997) (garnishment); Chewning v. District of Columbia, 
119 F.2d 459, 460 (D.C. Cir. 1941) (garnishment); Mayor of Balti-
more v. Hooper, 539 A.2d 1130, 1132 (Md. 1988) (holding, "upon 
considerations of public policy" rather than sovereign immunity, 
that municipal corporations are not amenable to garnishment); 
Kator, Scott, & Heller, PC v. Landsidle, 35 Va. Cir. 107, 1994 WL 
1031399, at *2 (Va. Cir. Ct. 1994) (attorney's equitable claim against 
settlement fund); Slaughter v. Winston, 347 F. Supp. 1221, 1222-23 
(E.D. Va. 1972) (garnishment); Phillips v. Rector of Univ. of Va., 34 
S.E. 66 (Va. 1899) (mechanic's lien); see also Department of the 
Army v. Blue Fox, Inc., 525 U.S. 255, 264 (1999) (noting that 
"sovereign immunity bars creditors from attaching or garnishing 
funds in the Treasury, or enforcing liens against property owned by 
the United States" (citations omitted)); Knight v. United States, 
982 F.2d 1573, 1578-79 (Fed. Cir. 1993) (holding that sovereign 
immunity bars an attorney's lien against the United States).

(quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974) (inter-
nal quotation marks and alteration omitted)); see Lizzi v. 
Alexander, 255 F.3d 128, 133 (4th Cir. 2001) (requiring "clear 
and unequivocal" waiver of WMATA's immunity). We find 
nothing to indicate such a waiver of WMATA's immunity 
against a suit for breach of duty to enforce an attorney's lien.

 Although the WMATA Compact provides that WMATA 
may "[s]ue and be sued," Compact s 12(a), we have held that 
provision to extend only as far as the more specific (and 
partial) waiver of sovereign immunity contained in section 80 
of the Compact. Morris, 781 F.2d at 221 n.3; accord Lizzi, 
255 F.3d at 133-34. Section 80 provides, in relevant part, as 
follows:

 The Authority shall be liable for its contracts and for its 
 torts and those of its Directors, officers, employees and 
 agent[s] committed in the conduct of any proprietary 
 function, in accordance with the law of the applicable 
 signatory (including rules on conflict of laws), but shall 
 not be liable for any torts occurring in the performance 
 of a governmental function.
 
Compact s 80 (emphasis added). This section falls far short 
of a clear and unequivocal waiver of WMATA's immunity 
against attorney's charging liens. On its face, section 80 
makes no reference to liens or their enforcement, nor is there 
any implication in its text that the Authority's funds may be 
made subject to equitable liens of any sort. In the District of 
Columbia,7 an attorney's lien against funds held by a third 
party (like WMATA) is not a contract with, or tort of, the 
third party, but rather is a "qualified right of property which 
a creditor has in or over specific property of his debtor, as 
security for the debt." Wolf v. Sherman, 682 A.2d 194, 196-

__________
 7 We look to District of Columbia law to define the nature of 
Watters' claim, because the District is where the obligation (to pay 
attorney's fees) that generated the lien arose, and section 80 of the 
Compact provides that WMATA is liable "in accordance with the 
law of the applicable signatory." See Belton v. Washington Metro. 
Area Transit Auth., 20 F.3d 1197, 1199 n.1 (D.C. Cir. 1994).

97 (internal quotation marks and alteration omitted).8 The 
District does not have a statute that authorizes the imposition 
of an attorney's lien; such a lien is an equitable device that 
"arises when an attorney obtains a judgment [or settlement] 
for a client, and ... [is] merely a claim to ... equitable 
interference by the court to have that judgment [or settle-
ment] held as security for ... the attorney's charges against 
the client." Id. at 197 (internal quotation marks and altera-
tion omitted); see Elam v. Monarch Life Ins. Co., 598 A.2d 
1168, 1171 (D.C. 1991).

 Watters contended at oral argument that the breach of an 
attorney's lien constitutes a tort, and is thus covered by 
section 80's waiver of sovereign immunity for torts committed 
by the Authority.9 But even if that contention were correct,10 
it begs the question of whether Watters could have placed a 
lien on WMATA's property in the first place. As we have 
noted above, the case law of the three signatories indicates 

__________
 8 See also Blue Fox, 525 U.S. at 262-63 ("An equitable lien ... 
merely grants a plaintiff 'a security interest in the property, which 
[the plaintiff] can then use to satisfy a money claim' " (quoting Dan 
B. Dobbs, Law of Remedies s 4.3(3), at 601 (2d ed. 1993))); Black's 
Law Dictionary 933 (7th ed. 1999) (defining "attorney's lien" as 
"[t]he right of an attorney ... to encumber money payable to the 
client ... until the attorney's fees have been properly determined 
and paid"). In Grunley Construction Co., the District of Columbia 
Court of Appeals held that the District was immune from garnish-
ment notwithstanding a statute that expressly waived sovereign 
immunity as a defense to a suit on a contract. 704 A.2d at 290.

 9 Although Watters failed to file a brief in this court, we permit-
ted his counsel to address the sovereign immunity issue at oral 
argument. See Fed. R. App. P. 31(c).

 10 In Blue Fox, the Supreme Court suggested that a suit to 
enforce an equitable lien does not come within the Federal Tort 
Claims Act, which waives the federal government's immunity for 
"tort claims, in the same manner and to the same extent as a 
private individual under like circumstances." 28 U.S.C. s 2674; see 
Blue Fox, 525 U.S. at 260 n.3. We have not found a District of 
Columbia case that discusses the proper classification of an attor-
ney's claim against a third party for breach of an attorney's lien.

that he could not have. See supra note 6 and accompanying 
text.

 Our conclusion that WMATA is immune from the imposi-
tion or enforcement of an attorney's lien is bolstered by the 
same considerations that have led the courts to hold that 
public funds are generally immune from equitable liens and 
garnishments unless expressly permitted by statute. As the 
District of Columbia Court of Appeals declared in Grunley 
Construction Co. v. District of Columbia, "The policy behind 
the rule is manifest: the day-to-day fiscal integrity of local 
government could not be maintained if judgment creditors 
could seize funds that have been earmarked for other pur-
poses." 704 A.2d 288, 290 (D.C. 1997).11 A lien of the kind 
Watters seeks to enforce would have the same impact on the 
public fisc.12 Accordingly, we will not assume that the Com-
pact's signatories intended to waive WMATA's immunity 
from the imposition or enforcement of such liens absent a 
clear and unequivocal expression of their intent to waive. 
Finding no such expression, we conclude that Watters' action 
is barred by WMATA's sovereign immunity.13

__________
 11 See Buchanan v. Alexander, 45 U.S. 20, 20 (1846) (noting that 
"[t]he funds of the government are specifically appropriated to 
certain national objects, and if such appropriations may be diverted 
and defeated by state process or otherwise, the functions of the 
government may be suspended," and holding that the United States 
is therefore immune from writs of attachment against seamen's 
wages); Hooper, 539 A.2d at 1132 ("The policy of the law which 
prevents the laying of attachments in the hands of public officials 
seeks to prevent inconvenience and the disruption of public affairs." 
(internal quotation marks omitted)).

 12 As the Supreme Court noted in Hess v. Port Authority Trans-
Hudson Corp., WMATA is "an enterprise constantly dependent on 
funds from the participating governments to meet its sizable operat-
ing deficits." 513 U.S. 30, 49 (1994) (citing Morris, 781 F.2d at 225-
27). The " 'agency is so structured that, as a practical matter, if the 
agency is to survive, a judgment must expend itself against state 
treasuries.' " Id. (quoting Morris, 781 F.2d at 27).

 13 This case was originally filed by Watters in the Superior Court 
of the District of Columbia, and then removed to federal court by 

 III

 For the foregoing reasons, we conclude that WMATA is 
shielded by sovereign immunity from Watters' suit for breach 
of duty to enforce an attorney's lien. As a consequence, the 
district court is without jurisdiction to grant him the recovery 
he seeks. We therefore vacate the judgment of the district 
court, and remand with instructions to dismiss this case for 
lack of jurisdiction.

 Vacated and remanded.

__________
WMATA. After we heard oral argument, the Supreme Court held, 
in Lapides v. Board of Regents, 122 S. Ct. 1640 (2002), that when a 
state has waived sovereign immunity on a state-law claim in its own 
courts, it waives its Eleventh Amendment immunity by removing 
that claim to federal court. As the WMATA signatories have not 
waived immunity from attorney's liens in their own courts, the 
narrow holding of Lapides does not apply to this case. Even if it 
did, it would not be controlling because WMATA's immunity does 
not arise solely from the Eleventh Amendment. In any event, 
Watters has never argued that WMATA waived its immunity 
(Eleventh Amendment or otherwise) by removing this case to 
federal court. Unlike the defense of sovereign immunity, which is 
jurisdictional and may be raised at any time, the claim that 
WMATA waived its immunity is an argument that must be raised in 
a timely fashion. Cf. Whelan v. Abell, 48 F.3d 1247, 1250-51 (D.C. 
Cir. 1995) (holding that appellant waived its claim that its opponent 
had waived the protections of the Noerr-Pennington doctrine by 
failing to assert the opponent's waiver); Belton, 20 F.3d at 1202 
(holding that a party may waive its opponent's waiver of an argu-
ment by not raising it on appeal). And we see no reason to 
consider, sua sponte, an issue upon which neither this circuit nor 
the Supreme Court has yet opined.