George A. MARTIN, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

No. CIV.A.02–851 RMC.

United States District Court, District of Columbia.

April 3, 2003.

---

Anne HamiltonStewart Fraser, Washington, DC, for plaintiff.

George A. Martin, Washington, DC, pro se.

David R. Keyser, Washington Metro. Area Transit Authority, Washington, DC, for defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

George A. Martin applied for a position as a part-time bus driver with the Washington Metropolitan Area Transit Authority ("WMATA") on February 2, 2002. His application was initially denied and he was accepted in June 2002 only after he protested. He sues for alleged irregularities in the hiring process that deprived him of approximately 14 weeks of work as a bus driver. Pending before the Court is WMATA's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court denies this motion, but dismisses Count II of the amended complaint *sua sponte* for lack of jurisdiction.

## I. BACKGROUND

There is little dispute about the relevant facts, which are taken from the amended complaint. Mr. Martin applied for the position of part-time bus operator on February 2, 2002. He sat for a written examination, required of all applicants, on February 2, 2002, and received a passing score. In his amended complaint, he alleges that the examination was not proctored to prevent cheating and, in fact, numerous test takers exchanged answers or sat in a group to answer the examination collectively. He reported for an interview, as required of all applicants, on February 16, 2002, and on March 2, 2002, he provided a urine sample to a WMATA representative. This process, together

with significant paperwork (including a birth certificate, high school certificate, and proof that an applicant had passed a commercial drivers' license learning test), was approximately the same for all applicants except for the observed cheating on the written exam.

By letter dated March 21, 2002, Mr. Martin was advised that his application was rejected "in favor of another candidate whose qualifications more closely matched the position requirements." *See* Am. Compl. ¶ 13; Exhibit A. By letter received by WMATA on April 16, 2002, Mr. Martin protested the rejection of his employment application. On that date, he also filed an application with this Court to proceed with this suit *in forma pauperis.* Granting that application, the Court appointed counsel to represent and assist Mr. Martin in prosecuting his lawsuit. Thereafter, by letter from WMATA dated May 2, 2002, Mr. Martin was informed that his urine sample was not "sufficient" to complete the urine test but that he would be permitted to retest. This was the first indication to Mr. Martin that there was any problem with his urine test and it was inconsistent with the donor record he received on the date he actually provided the initial sample. *See id.* ¶ 15; Exhibit B. Mr. Martin was re-tested and successfully completed all requirements for the position. He reported for orientation on June 12, 2002, and commenced training on June 17, 2002.

## II. ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be denied unless the plaintiff "can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). "[A]t this stage in the proceedings, the Court accepts as true all of the [c]om-

plaint's factual allegations." *Tripp v. DOD*, 219 F.Supp.2d 85, 89 (D.D.C.2002). Unless unsupported by the facts set forth in the complaint, all inferences are drawn in favor of the plaintiff. *See Kowal*, 16 F.3d at 1276.

■ Mr. Martin first claims that WMATA breached a contract with him, as well as the duty of good faith and fair dealing that is implied in every contract, when it failed to follow its "published hiring procedures." Plaintiff's Opposition to Motion to Dismiss for Failure to State a Claim ("Opposition") at 1. These procedures are alleged to constitute an offer by WMATA to give Mr. Martin's application "fair and consistent consideration according to announced criteria." *Id.* at 3. Mr. Martin states that he accepted WMATA's offer by submitting an employment application and participating in the application process. To support his claim that published hiring procedures can give rise to contractual obligations, Mr. Martin cites *Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52 (D.C.1997). In that case, an employer's policy manual was found to impose contractual limitations on its right to discharge employees. Mr. Martin argues that "[t]here is no legal or logical reason why the same rule should not apply to applicants for employment who submit applications according to WMATA's prescribed set of rules." Opposition at 2; *see also Rinck v. Ass'n of Reserve City Bankers*, 676 A.2d 12 (D.C.1996) (finding that an at-will employment relationship may take on characteristics of a contractual relationship under proper conditions); *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 745 (D.C.Cir.1998) (holding that it is a jury question whether an employer handbook created a contract).

■ Mr. Martin also claims that, even if there were no contract, WMATA breached its oral and written assurances that it would follow its published hiring procedures. He asserts that he relied on these assurances to his detriment by expending substantial time and effort participating in WMATA's application process.

In its motion to dismiss, WMATA argues that it was not legally required to contract with Mr. Martin and he, likewise, possessed no common law rights that it was bound to respect.[1] WMATA notes that, if Mr. Martin were an "at will" employee, he could have been "hired, fired, transferred, [or] demoted without regard to any rights save those provided by statute or a union contract, neither of which are present here." Opposition at 2. These arguments, however, misunderstand Mr. Martin's claims. He does not allege that WMATA had a contractual obligation to *hire* him or even that it owed him a common law duty to enter into a contract to follow its published hiring procedures. Instead, Mr. Martin claims that WMATA chose to bind itself to follow these procedures in exchange for Mr. Martin's participation in its application process. Although it is certainly possible that WMATA's published hiring procedures did not actually constitute an offer, the Court does not yet possess enough information to make that determination. On a motion to dismiss—without the benefit of the text of WMATA's alleged published hiring procedures—the Court draws this inference in favor of Mr. Martin. Similarly, the viability of Mr. Martin's claim that WMATA made oral and written assurances upon which he reasonably relied is conditioned on the specific assurances allegedly made by WMATA. Consistent with notice pleading standards,

---

1. WMATA acknowledges that it owes certain duties to applicants under civil rights laws; however, no such violations are alleged in this lawsuit.

at this point in the lawsuit—without the benefit of affidavits—the Court infers that these alleged assurances, once propounded, would form a sufficient basis for a claim under the theory of promissory estoppel.

██ WMATA also argues for dismissal based on a mistaken belief that it is absolutely immune from lawsuits alleging failures in its hiring practices.[2] In support, it quotes the D.C. Circuit's statement in *Burkhart v. WMATA* that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." 112 F.3d 1207, 1217 (D.C.Cir.1997). *Burkhart*, however, dealt with allegations of tortious conduct, including negligent hiring, not a purported breach of contract by WMATA. In declaring WMATA's immunity for its hiring, training, and supervisory decisions, the Court of Appeals was examining WMATA's liability only for *tort* claims under the WMATA Compact between the District of Columbia, Maryland, and Virginia ("Compact").[3] *See id.* at 1216. This is apparent from the fact that it first had to find that these types of decisions are discretion-

ary—tort liability being conditioned on whether they occurred "in the performance of a governmental function"—and that it used the word "thus" before stating that WMATA was immune under the circumstances in that case.[4] D.C. CODE § 9–1107.01.

██ The D.C. Circuit's decision in *Beebe v. WMATA* is instructive on this issue. 129 F.3d 1283 (D.C.Cir.1997). In that case, which was decided after *Burkhart*, the Court of Appeals held that "[s]ection 80 of the Compact waives WMATA's sovereign immunity for contractual disputes." *Id.* at 1289. It also noted that, "like any District of Columbia employer[,] WMATA can bind itself contractually in a personnel manual." Such a ruling supports this Court's conclusion that *Burkhart's* finding of immunity for WMATA's decisions concerning hiring, training, and supervising only applies against tort claims, since a personnel manual, by its very nature, affects these types of decisions. Although WMATA is immune from tort claims arising from the hiring, firing, and supervision of its employees, it is not immune from breach of contract claims on employment issues to which it consented

---

**2.** Although WMATA brings this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, its defense of sovereign immunity is more appropriately decided under Rule 12(b)(1), which deals with jurisdiction. *See Watters v. WMATA*, 295 F.3d 36, 39–40 (D.C.Cir.2002) ("[U]nless WMATA's sovereign immunity has been waived, the district court lacks jurisdiction to enter a judgment against the Authority."). The Court, however, possesses the authority to address this issue *sua sponte*. *See Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211 (D.C.Cir.1996).

**3.** Section 80 of the Compact provides:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of

the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. CODE § 9–1107.01.

**4.** The Court of Appeals used similar language later in its opinion: "[W]e conclude that the hiring, training, and supervision of WMATA personnel are governmental functions. WMATA is *therefore* immune from suit for negligence in the performance of such functions." *Id.* at 1217 (emphasis added).

to be contractually bound. Therefore, WMATA's defense of sovereign immunity is inapplicable to Mr. Martin's claims for breach of contract and breach of the implied duty of good faith and fair dealing, these claims being based on an alleged contract under which WMATA agreed to follow its published hiring procedures.

WMATA is immune from Mr. Martin's promissory estoppel claim, however, as the Compact does not expressly waive WMATA's sovereign immunity for that particular cause of action. *See id.* at 1287 ("In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities."). It is well known that a waiver of sovereign immunity must be clear and unequivocal. Moreover, a waiver is strictly construed. *See Kingston Constructors, Inc. v. WMATA,* 860 F.Supp. 886, 888–89 (1994) ("Waivers must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires."). Section 80's waiver only denotes WMATA's liability for its contracts and torts occurring in the performance of a non-governmental function; it does not mention promissory estoppel, which is a distinct legal theory.

### III. CONCLUSION

Mr. Martin's claims for breach of contract and breach of the implied duty of good faith and fair dealing are sufficiently pled to survive WMATA's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. WMATA's sovereign immunity, however, bars his promissory estoppel claim, which consequently must be dismissed for lack of jurisdiction. An order accompanies this memorandum opinion.

### ORDER

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**. It is

**FURTHER ORDERED** that Count II of the amended complaint is **DISMISSED**.

**SO ORDERED.**