**Jesse R. CHESTER, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY Defendant.**

**No. CIV.A. 03–1573 EGS.**

United States District Court, District of Columbia.

Sept. 8, 2004.

Aria Shariati, Washington, DC, for Plaintiff.

Sara Lynne Bloom, Washington, DC, for Defendant.

### MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

Plaintiff Jesse R. Chester ("Chester" or "plaintiff") brings suit against defendant Washington Metropolitan Area Transit Authority ("WMATA" or "defendant"), alleging retaliation and wrongful termination in violation of common law (Count I) and the collective bargaining agreement ("CBA") between plaintiff's union, Office and Professional Employees International Union, Local 2 ("Local 2") and WMATA (Counts II and III). In addition, plaintiff alleges defendant violated the CBA (1) by not hiring plaintiff for a new position following his discharge (Count IV), (2) by hiring two white persons for positions that plaintiff (an African–American) could have applied (Count V), and (3) by refusing to promote plaintiff to a retiring supervisor's position for which plaintiff contends he was the most qualified candidate (Count VI). Defendant has moved to dismiss the complaint in its entirety or, in the alternative, for summary judgment.

### II. Background

Because defendant's Motion for Summary Judgment asserts absolute defenses, the Court's decision will be based on questions of law and very few facts are necessary to the decision.[1]

Plaintiff is an African–American man who, prior to the events giving rise to this

---

1. It should be noted that some dispute exists as to whether plaintiff exhausted his remedies under the CBA with respect to his non-selection for the replacement position (Count IV). However, both parties agree on the factual question of what remedies plaintiff pursued, and only disagree on the legal question of whether plaintiff's acts constituted exhaustion of the available remedies under the CBA, a question the Court can readily decide.

suit, had been employed by defendant since 1982. Plaintiff is a member of the Office and Professional Employees Union International, Local 2. Compl. at ¶ 14. An agreement between the union and defendant governed the conditions of plaintiff's employment with defendant. *Id.* Defendant is a governmental organization created by a multi-state compact between the District of Columbia, Virginia, and Maryland. Pl.'s Resp. to Def.'s Mot. at 1.

On June 27, 2000, an altercation occurred between plaintiff and Denton U. Kent, the Director of the Office of Property Development and Management ("LAND"). As a result of that altercation and pursuant to the CBA, plaintiff filed a Step 2 grievance on June 28, 2000. The grievance was denied on July 20, 2000. Plaintiff then filed a Step 3 grievance on July 31, 2002 (and again on October 2, 2000), which was denied on October 2. Plaintiff did not pursue Step 4 arbitration. Compl. at ¶¶ 14–30.

On May 1, 2002, plaintiff learned that, as a result of post–9/11 budget cuts, a Reduction–In–Force ("RIF") had been ordered. Plaintiff's position and that of one co-worker were to be eliminated and replaced by one new position. Plaintiff believes his position was eliminated in response to the grievance he filed in June 2000. *See* Compl. at ¶¶ 39, 41–44; Pl.'s Resp. to Def.'s Mot. at 8; Def.'s Mot. Ex. 4.

On May 24, 2002, Local 2 filed a Step 2 grievance on behalf of plaintiff to protest the elimination of his position. The Step 2 grievance was denied on June 7, 2002. Local 2 then filed a Step 3 grievance on June 11, 2002. On June 28, 2002, the Step 3 grievance was resolved by a mutually agreeable settlement, whereby plaintiff was allowed to remain in his position until the new position created by the RIF was filled. Compl. at ¶¶ 55–58.

On May 9, 2002, plaintiff received a list of "Current Vacancies" from defendant in order to seek alternate employment. On June 6, 2002, plaintiff applied for a position that was lower in rank, but received no response. On July 7, 2002, plaintiff learned the position had been vacant for two years and had been placed on "hold" two months prior (around the time of the RIF) by Director Kent. *Id.* at ¶¶ 48–54.

On June 28, 2002, plaintiff interviewed for the position left vacant by his retiring supervisor, but was not selected. *Id.* at ¶ 45. On July 29, 2002, LAND hired two new employees, both of whom are white. *Id.* at ¶ 59. On November 18, 2002, the new position created after the RIF was offered to an African–American employee with 11 years less seniority than plaintiff. Although plaintiff's statement of facts is unclear, it appears that plaintiff filed a Step 2 grievance regarding plaintiff's non-selection for the new position. The Court assumes that the Step 2 grievance was denied because plaintiff states that a Step 3 grievance was denied on December 13, 2002.[2] That same day, Local 2 filed a Step 4 appeal of the Step 3 denial, requesting final and binding arbitration. Compl. at ¶¶ 68, 70–71.

Plaintiff's Step 4 grievance over his non-selection for the new position never reached arbitration because Local 2 determined, based on its prior experience, that pursuing arbitration of plaintiff's grievance would be futile. Compl. at ¶ 72; *see* Pl.'s Resp. Ex. 1 (letter from Local 2 dated May 30, 2003, explaining why arbitration was not pursued).

Plaintiff has not alleged facts indicating he challenged Local 2's decision or be-

**2.** Defense Exhibit 8 demonstrates that plaintiff's Step 3 grievance was actually denied on November 13, 2002, but this factual dispute is only relevant to the statute of limitations questions, which the Court need not address.

lieved it to be in error. In addition, plaintiff has provided no facts indicating he filed any grievances under the CBA regarding defendant's hiring of two white people or its refusal to promote plaintiff to his retiring supervisor's position.

### III. Standard of Review

Because it is necessary to consider evidence presented or facts alleged extrinsic to the original complaint, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b)-(c). Under Rule 56, summary judgment is appropriate only when the record before the court shows that "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), and the moving party has demonstrated that the non-moving party did not "make a showing sufficient to establish the existence of an element essential to that party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party's evidence must be accepted as true and all reasonable inferences drawn in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Greene v. Amritsar Auto Servs. Co.*, 206 F.Supp.2d 4, 7 (D.D.C.2002). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position," *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505, is insufficient to withstand a motion, and "the non-moving party may not rely solely on mere conclusory allegations," *Sokos v. Hilton Hotels Corp.*, 283 F.Supp.2d 42, 46 (D.D.C. 2003) (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999)).

### IV. Discussion

**A. The WMATA Compact Provides Defendant With Immunity From Plaintiff's Wrongful Termination Tort Claim.**

"In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C.Cir. 1997) (citing *Morris v. WMATA*, 781 F.2d 218, 219 (D.C.Cir.1986)). However, this immunity is not absolute. In section 80 of the Compact, WMATA expressly waives its immunity from suits for contracts and for torts "committed in the conduct of any proprietary function," while retaining immunity "for any torts occurring in the performance of a governmental function." D.C.Code Ann. § 9–1107.01(80) (2001). In order to distinguish proprietary functions from governmental functions, the court first inquires whether the challenged activity "amounts to a 'quintessential' governmental function, like law enforcement. If so, the activity falls within the scope of WMATA's sovereign immunity." *Beebe*, 129 F.3d at 1287 (citing *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C.Cir. 1997) (internal citations omitted)).

In the case of activities which are not quintessential governmental functions, such as the personnel decisions at issue here, "the immunity question turns on whether the activity is 'discretionary' or 'ministerial.'" *Id.* Only discretionary acts fall within section 80's retention of sovereign immunity for governmental acts. *Beebe*, 129 F.3d at 1287. The D.C. Circuit has held that "decisions concerning the hiring, training, and supervision of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart*, 112 F.3d at 1217. The Circuit affirmed this reasoning in *Beebe*, noting that the WMATA Compact "confers broad powers on WMATA to '[c]reate and abolish offices, employments and positions,'" 129 F.3d at 1287 (quoting D.C.Code Ann. § 9–1107.01(12)(g)), and concluding that, with regard to personnel decisions, WMATA is immune from any tort claims. *Beebe*, 129 F.3d at 1288.

■ Plaintiff attempts to distinguish the clear precedent of *Beebe* and *Burkhart*, claiming that their holdings should be restricted to negligent tort claims. According to plaintiff, because his retaliation claim alleges an intentional tort, it is distinguishable from the past cases establishing WMATA's immunity from tort claims resulting from employment decisions. Plaintiff provides no precedent for drawing a distinction between intentional and negligent torts claims and fails to acknowledge that the D.C. Circuit explicitly held in *Beebe* that WMATA was immune from *all* tort suits stemming from personnel decisions, "including the alleged intentional torts." *Id.; see also Smith v. WMATA,* 1997 WL 182286, *4 (D.D.C. April 4, 1997) ("[T]he court is not aware of a single case in which WMATA has been held liable for torts arising from the administration of its personnel system.").

Thus, defendant is entitled to summary judgment on Count I because WMATA is immune from any tort suits arising out of its discretionary personnel decisions made "in the performance of a governmental function." D.C.Code Ann. § 9–1107.01(80).

**B. The Doctrine Of Res Judicata Prevents Suit On Plaintiff's Wrongful Termination Claims Because These Claims Have Already Been Resolved By Settlement Between The Parties.**

■ With respect to all of plaintiff's wrongful termination claims (Counts I, II, and III), the doctrine of res judicata bars plaintiffs claims because the allegations were already raised and settled within the binding CBA grievance process and cannot be pressed again. *See Sanders v. WMATA,* 819 F.2d 1151, 1156 (D.C.Cir.1987). Plaintiff's Step 3 grievance of the termination of his position was settled on June

28, 2002, prior to arbitration, by a mutually agreeable accord between Local 2 and defendant, whereby plaintiff was allowed to remain in his eliminated position until the new position was filled. Plaintiff does not allege he objected to this settlement. As the D.C. Circuit declared in *Sanders,* settlement agreements "further support preclusion" of additional claims by parties to the settlement. 819 F.2d at 1157–58. Under this rationale, plaintiff is barred from bringing his previously settled claim again. *See id.* If plaintiff objected to the settlement, he could have refused it and taken his grievance to arbitration.[3] However, plaintiff does not even attempt to refute the defendant's assertion of res judicata preclusion for the wrongful termination claims and such silence must be viewed as a concession. *See FDIC v. Bender,* 127 F.3d 58, 67–68 (D.C.Cir.1997).

Thus, having already been settled by the CBA grievance process, the doctrine of res judicata prevents Counts I, II and III of plaintiff's complaint from being litigated again and summary judgment on these counts shall be granted for defendant.

**C. Plaintiff's Failure To Exhaust The Grievance Procedures Of The CBA And The Doctrine of Collateral Estoppel Require That Summary Judgment On Counts IV–VI Be Granted For Defendant.**

■ Section 66(c) of the WMATA Compact requires employees to submit all unresolved "labor disputes" to arbitration. D.C.Code Ann. 9–1107.01(66)(c); *see Beebe,* 129 F.3d at 1286–87. Plaintiffs allegations in Counts IV–VI (wrongful refusal to place plaintiff in an available position or to train him for a new position; discrimination; and wrongful refusal to promote plaintiff to retiring supervisor's position)

---

**3.** Section 66(c) of the WMATA Compact *requires* the WMATA to submit to arbitration in the case of any labor dispute in which collective bargaining does not result in an agreement. D.C.Code Ann. § 9–1107.01(66)(c).

were never submitted to arbitration and are therefore not properly before the Court.

Plaintiff acknowledges that prior to filing suit, unionized employees must first exhaust the grievance procedures provided in the CBA. Pl.'s Resp. at 9; *see, e.g., Beebe,* 129 F.3d at 1286–87; *Sanders,* 819 F.2d at 1158. Here, defendant alleges that, with respect to Count IV, plaintiff has not yet exhausted all the remedies under the CBA because the claim has not been submitted to arbitration. With respect to Counts V and VI, defendant contends that these claims have not been grieved under the CBA at all and are therefore precluded from being brought in this Court because arbitration is required under the Compact and the CBA and because the doctrine of collateral estoppel precludes bringing claims that could have and should have been brought previously.

All parties agree that the allegations contained in Counts IV, V, and VI have not been submitted to arbitration. A Step 4 grievance was filed with respect to Count IV, and arbitration was requested, but the claim has never actually been submitted to arbitration. The undisputed facts indicate that Local 2 decided not to pursue plaintiff's claim through arbitration after determining it would be futile to do so. *See* Pl.'s Resp. Ex. 1. Defendant contends that this failure to submit the grievance to arbitration prevents the filing of a suit, while plaintiff asserts that because Local 2 will not pursue arbitration, he has exhausted all remedies under the CBA and should be permitted to bring suit. Plaintiff's argument is unpersuasive. Plaintiff has not suggested that Local 2's decision not to pursue arbitration is flawed or unreasonable and nothing in the record suggests that plaintiff ever requested Local 2 to reconsider its decision.

Furthermore, Article XX section 4 of the CBA states: "the Authority and the Union recognize the right of the employee(s) to settle his or her grievance directly." *See* Pl.'s Resp. Ex. 2. Plaintiff does not claim to have attempted to settle his grievance directly with WMATA, by requesting arbitration. Furthermore, nothing in the record suggests that plaintiff was precluded from seeking relief directly from defendant, or that it would have been futile to do so. *See Martin v. WMATA,* 99 F.3d 448 (Table) (D.C.Cir.1996). Section 66(c) of the WMATA Compact requires defendant to submit to arbitration for unresolved labor disputes and nothing indicates defendant would not have done so had plaintiff requested. In short, plaintiff has alleged no set of facts to demonstrate why arbitration of the "non-selection" grievance (Count IV) was not pursued directly with WMATA and/or by appeal to Local 2 for reconsideration of its decision not to pursue arbitration. Accordingly, the Court cannot consider this claim because plaintiff did not exhaust his remedies under, and as required by, the CBA. *Cf. UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees,* 56 F.3d 1469, 1475–76 (D.C.Cir.1995) (public employees barred from bringing suit against university when employees failed to seek relief directly from university or to show that such a request would be futile).

The law of this Circuit is clear, summary judgment is appropriate for "claims that *should* have been submitted to arbitration, even if they were not actually heard." *Sanders,* 819 F.2d at 1157 (quoting *Schattner v. Girard, Inc.,* 668 F.2d 1366, 1368 (D.C.Cir.1981) (emphasis in original)). Under this rule, absent a final arbitration decision, the Step 3 denial of plaintiff's grievance of his non-selection is binding. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). As such, judicial review is not available because plaintiff has provided neither evidence nor allegation that the decision was unfair or flawed

or represented "some egregious deviation from the norm." *Sanders,* 819 F.2d at 1157.

■ In addition, plaintiff has not alleged that he ever attempted to grieve either the discrimination claim (Count V) or the non-promotion claim (Count VI). As such, under settled law, plaintiff "may not seek redress in court on claims that could and should have been grieved." *Id.* at 1157 (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). This rule amounts to a form of collateral estoppel, or issue preclusion, prohibiting non-grieved complaints from being brought when, as here, the plaintiff had the opportunity and the obligation to do so.

Thus, plaintiff is barred from pursuing Counts IV, V, VI in this Court because the grievance remedies afforded under the CBA have not been exhausted for each claim and the doctrine of collateral estoppel prevents non-grieved complaints under the CBA from being brought before the Court.

**D. Summary Judgment Shall Be Granted For Defendant For Plaintiff's Breach Of CBA Claims Because Plaintiff Has Not Alleged Local 2 Breached Its Duty of Fair Representation, As Required By The Law Governing CBA Dispute Adjudication, § 301 Of The Labor Management Relations Act, 29 U.S.C. § 185.**

■ Counts II through VI of plaintiff's complaint allege defendant breached the CBA.[4] It is well settled that an "individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Such a suit, because it requires interpretation of the CBA, is governed by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See DelCostello,* 462 U.S. at 163, 103 S.Ct. 2281 ("The suit against the employer rests on § 301, since the employee is alleging breach of the collective bargaining agreement."); *Sokos,* 283 F.Supp.2d at 46 (holding that only if the claim can be resolved without interpreting the CBA can the plaintiff avoid § 301 preemption). Here, plaintiff alleges numerous violations of the CBA that will necessarily require its interpretation to resolve. As such, the alleged breach of the CBA claims is governed by § 301 of the LMRA.

■ Under the LMRA, an employee is required to exhaust any grievance procedures provided by the CBA before coming to court and will be bound by the result of such procedures, subject to very limited judicial review. *See DelCostello,* 462 U.S. at 163–64, 103 S.Ct. 2281. However, the Supreme Court has enumerated two instances when an individual employee will be allowed to obtain judicial review of a breach of CBA claim without first exhausting the CBA grievance process. *See, e.g., DelCostello,* 462 U.S. at 163–164, 103 S.Ct. 2281; *Vaca,* 386 U.S. at 184–87, 87 S.Ct. 903. In order to obtain judicial review without first exhausting the remedies under the CBA, plaintiff must allege either that his employer's actions effectively repudiated the grievance procedures of the CBA or that his union wrongfully refused to pursue his grievance. *See Vaca,* 386 U.S. at 185, 87 S.Ct. 903. In the present case, plaintiff has not alleged, and nothing

---

**4.** Plaintiff taken great pains to allege his employment is governed by an implied contract. However, because his allegations rest on an alleged violation of the CBA, such pains are unnecessary. The CBA is an express contract governing the conditions of plaintiff's employment and the defendant enjoys no immunity over contract claims. D.C.Code 9–1107.01(80).

in the record suggests, that defendant repudiated the CBA's grievance procedures. Plaintiff's wrongful termination grievance was resolved by settlement prior to arbitration and plaintiff's non-selection grievance was not submitted to arbitration in the discretion of Local 2. Nothing suggests that defendant was not willing and/or ready to submit to arbitration if Local 2 or plaintiff requested.

Therefore, plaintiff's only means of obtaining judicial review, without first submitting his grievance to arbitration, is to allege that Local 2 breached its duty of fair representation by settling the wrongful termination prior to arbitration and/or choosing not to pursue arbitration for the non-selection claim. In effect, plaintiff's claim must consist of two causes of action: (1) a § 301 breach of the CBA claim against defendant; and (2) a breach of the duty of fair representation against Local 2. As noted in *DelCostello*, "the two claims are inextricably interdependent," 462 U.S. at 164–65, 103 S.Ct. 2281, but, contrary to defendant's contention, the plaintiff is not required to bring both causes of action simultaneously. However, "the case [plaintiff] must prove is the same whether he sues one, the other, or both." *Id.* at 165, 103 S.Ct. 2281. Plaintiff must establish that defendant's actions constituted a breach of the CBA *and* that Local 2's actions in not exhausting the grievance procedures available to plaintiff under the CBA constituted a breach of its duty of fair representation. In the present case, accepting as true all of plaintiff's allegations that defendant breached the CBA, plaintiff's claims must still fail because plaintiff has not alleged, and nothing in the record indicates, that Local 2 breached its duty of fair representation. Thus, summary judgment in favor of defendant on Counts II through VI is appropriate

### V. Conclusion

Upon consideration of the Motion to Dismiss or, in the alternative, for Summary Judgment, the Response and Reply there to, the applicable statutory and case law and for the all reasons stated herein, defendant's Motion for Summary Judgment shall be **GRANTED** in its entirety.

An appropriate Order and Judgment accompanies this Memorandum Opinion.