**UNITED STATES of America, Plaintiff,**

v.

**BAROID CORPORATION, Baroid Drilling Fluids, Inc., DB Stratabit (USA) Inc., and Dresser Industries, Inc., Defendant.**

**No. CIV.A.93–2621 (RCL).**

United States District Court, District of Columbia.

Nov. 19, 2004.

Angela Louise Hughes, Anne K. Bingaman, Roger W. Fones, U.S. Department of Justice, Anti–Trust Division, Washington, DC, for Plaintiff.

Mark L. Kovner, Kirkland & Ellis LLP, Paul Buck Hewitt, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Neil Winston Imus, Vinson & Elkins, L.L.P., Mark E. Nagle, Sheppard Mullin Richter & Hampton, Washington, DC, for Defendants.

William Bradford Reynolds, Ferdose al–Taie, James Granger Kress, Howrey Simon Arnold & White, LLP, Washington, DC, Harold D. Murry, Jr., J. Bruce McDonald, Mary C. Spearing, Rufus W. Oliver, III, Baker & Botts, L.L.P., Houston, TX, for Respondents.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Defendant Smith International, Inc. ("Smith") has moved the Court for an order construing its obligations under the Modified Final Judgment entered in this case by Judge Sporkin on September 19, 1996. After Anchor Drilling Fluids U.S.A., Inc. ("Anchor"), a party to the Modified Final Judgment, filed its opposition and Smith filed its reply, Anchor moved for leave to file a surreply. Now before the Court are the motion for leave to file a surreply and the motion for a construal order. For the reasons set forth herein, the Court denies the motion for leave to file a surreply and grants the motion for a construal order.

## I. BACKGROUND

### A. History of the Case

In 1993, the Department of Justice filed this antitrust lawsuit against Baroid Corporation and Dresser Industries, Inc. to prevent the two companies' planned merger. The companies assuaged the Department of Justice and the parties entered into a consent decree that became embodied in the Final Judgment entered on April 12, 1994. In compliance with that Final Judgment, Dresser Industries sold its ownership interest in M–I, a drilling fluids business, to Smith, which agreed to be bound by the Final Judgment. The Final Judgment prohibited Smith, as purchaser, from further acquiring certain other drilling fluid businesses, including Anchor Drilling Fluids AS of Norway.

On September 19, 1996, about two years after entry of the Final Judgment, the Court entered a Modified Final Judgment upon the joint motion of Smith and the Department of Justice. The Modified Final Judgment permitted Smith to purchase Anchor Drilling Fluids AS of Norway so long as Smith sold off that company's United States drilling fluids operation and complied with the Stipulated Divestiture Agreement filed on June 5, 1996. Smith then acquired Anchor Drilling Fluids AS of Norway and divested itself of the United States operation, which led to the creation of Anchor. As a result of this transaction, Anchor became bound by the Modified Final Judgment.

The Stipulated Divestiture Agreement gives Anchor the opportunity to purchase from Smith unlimited quantities of crude

barite ore, an important component of drilling fluids. The agreement provides:

At the option of the purchaser of Anchor USA [Anchor], M–I [now Smith] shall supply the purchaser unlimited quantities of crude barite ore for its own consumption until five years from the date the order modifying the Judgment is filed and entered, at a price no greater than the highest price set forth in Industrial Minerals Magazine for the month which the order is placed with M–I for the country from which the crude barite ore will be sourced and for the appropriate form of packaging. If the purchaser of Anchor USA exercises its option to have M–I supply crude barite ore, it must notify M–I no less than four months prior to the date of delivery of the crude barite ore. At the option of the purchaser of Anchor USA, M–I's obligation to supply crude barite ore on the terms stated herein may be extended an additional five years.

Joint Mot. to Modify Final Judgment & Stipulated Divestiture Agreement ¶ II.G, *United States v. Baroid Corp.*, No. 93–2621 (D.D.C. June 5, 1996).

Since entry of the Modified Final Judgment, Smith has offered to supply Anchor with crude barite ore, but Anchor has contracted with Smith to purchase only ground barite ore, not crude barite ore. (Brown Aff. ¶¶ 14, 21.). Crude barite ore is a "rock-like material" in a "semi-crushed state, with pieces ranging . . . in size from approximately 12–inch chunks to particles the size of sand." *Id.* ¶ 4. Ground barite ore is a finished product: it is "flour-like" and "ready for sale and use as a drilling fluid additive." *Id.* ¶ 5.

Both Smith and Anchor agree that their companies' relationship has been rocky and subject to a series of ongoing disputes concerning Smith's supply of barite ore to Anchor. Due to transportation costs, Smith has had to raise its price for delivery of ground barite for all customers, including Anchor. Anchor protested. Brown Aff. ¶ 17. In 1999, Anchor filed and the parties settled a suit concerning the supply of barite ore. Earlier this year, Anchor filed a second suit against Smith in the United States District Court for the District of Oklahoma. *See* Compl., *Anchor Drilling Fluids, U.S.A., Inc., v. M–I LLC*, No. 04–CV–375 (D.Okla. Apr. 28, 2004). In several parts of the complaint, Anchor alleged breach of the supply agreement set forth in the Modified Final Judgment. *See, e.g., id.* ¶ 34 (as violation of the Sherman Act), *id.* ¶ 61 (as violation of the Oklahoma law), *id.* ¶ 67 (as violation of the contract law).

### B. Motion to Construe

On May 14, 2004, Smith moved this Court to issue an order construing the September 19, 1996 Modified Final Judgment. Smith's motion asks the Court to make the following construction of Paragraph II.G: first, that Smith's obligation to supply "crude barite ore" does not require Smith to supply ground barite ore; and second, that the obligation to supply crude barite ore does not include the obligation to process or deliver that ore. Smith served its motion on Anchor and on the Department of Justice. Anchor lodged an opposition with this court; the Department of Justice has remained silent. Anchor's main argument is that this Court lacks jurisdiction to enter an order construing the Modified Final Judgment.

## II. ANALYSIS

### A. Jurisdiction

■ Anchor contends that this Court lacks jurisdiction to issue the requested construal order because there is no case or controversy as required by Article III of the Constitution. Anchor is mistaken on

the law. There is "no doubt" that federal courts have continuing jurisdiction to protect and enforce their judgments and consent decrees. *Central of Ga. R.R. Co. v. United States*, 410 F.Supp. 354, 357 (D.D.C.1976) (citing *Riggs v. Johnson Cty.*, 73 U.S. (6 Wall.) 166, 18 L.Ed. 768 (1867)); *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C.Cir.2002). "First, they may interpret and enforce a decree to the extent authorized either by the decree or by the related order. Second, they may modify a decree pursuant to Federal Rule of Civil Procedure 60(b)(5)." *Pigford*, 292 F.3d at 923.

■ In the present case, the Modified Final Judgment specifically contemplates that the Court would retain jurisdiction to address the parties' future needs. The Modified Final Judgment states that:

> Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the provisions hereof, for the enforcement of compliance herewith, and for the punishment of any violations hereof.

Final Judgment ¶ XIV, *United States v. Baroid Corp.*, No. 93–2621 (D.D.C. Apr. 12, 1994). Therefore, by the terms of the Modified Final Judgment, this Court remains open to the parties' applications for "orders and directions" that "may be necessary or appropriate for the construction" of the judgment. *Id.* Smith's motion, as an application for an order concerning the Modified Final Judgment's construction, is appropriate and within the jurisdiction of this Court.

■ Although Anchor's Article III argument is rejected, Anchor's assertion of non-controversy, if true, might deprive the court of its authority to issue a construal order if, by the terms of the jurisdiction retention clause, the order would be neither "necessary" nor "appropriate." [1] However, Anchor's assertion of non-controversy is rejected and a construal order is deemed appropriate in this case. Despite the previous and ongoing antitrust litigation between the parties in other courts and Anchor's admission that the parties have had numerous disputes over the supply of barite ore, Anchor would have this court believe that there is complete agreement with Smith about the meaning of Paragraph II.G of the Stipulated Divestiture Agreement. Anchor's statement that the paragraph "says what it says and requires no clarification," (Opp. Mem. at 5.), rings hollow: it is not an open admission that Smith's proposed interpretation is correct. Given the history of conflict between Smith and Anchor and the nature of Anchor's statement, the Court finds it appropriate to issue a construal order.

**B. Interpretation of the Modified Final Judgment**

■ "[T]he construction of a consent decree is essentially a matter of contract law." *Citizens for a Better Envnt. v. Gorsuch*, 718 F.2d 1117, 1125 (D.C.Cir.1983); *see also United States v. Microsoft Corp.*, 147 F.3d 935, 945 (D.C.Cir.1998). "Under general contract law, the plain and unambiguous meaning of an instrument is controlling, and the Court determines the intentions of the parties from the language used by the parties to express their agreement." *See WMATA v. Mergentime*

---

1. While Anchor does not spell out this legal argument, it appears to be what Anchor argues.

*Corp.,* 626 F.2d 959, 961 (D.C.Cir.1980); *see Lucas v. U.S. Army Corps of Eng'rs,* 789 F.Supp. 14, 16 (D.D.C.1992) ("Intent is construed by an objective standard and evidenced from the words of the contract itself."). Only if the instrument's language is ambiguous may Courts turn to other evidence of the parties' intent. *United States v. Western Elec. Co.,* 894 F.2d 1387, 1394 (D.C.Cir.1990). Smith asks the Court to construe Paragraph II.G of the Modified Final Judgment's Stipulated Divestiture Agreement as follows: first, that the paragraph obliges Smith to supply "crude barite ore" but not ground barite ore; and second, that the paragraph obliges Smith to supply crude barite ore but does not oblige Smith to transport or process that ore.

Smith contends, and the Court agrees, that Modified Final Judgment's language is unambiguous on both these points. The language supports Smith's first assertion that Paragraph II.G only concerns crude barite ore. In that paragraph, the word "crude" always modifies the word "barite." There is no mention whatsoever of ground barite ore. The language also supports Smith's second assertion that Paragraph II.G concerns supply and not transport or processing of crude barite ore. The paragraph uses the word supply, which Webster's Ninth New Collegiate Dictionary defines as "to make available for use." "To make available" does not include the obligation to deliver or process. Moreover, the paragraph sets forth a pricing scheme for the crude barite ore based on the ore's country of origin and packaging, not some delivery or processing method.

Anchor offers no alternative reading of Paragraph II.G. Rather, Anchor merely protests that the Modified Final Judgment's Stipulated Divestiture Agreement is not the only source of Smith's legal obligations to Anchor. Whether this is so is not relevant to how the Court ought to construe the plain language of its own consent decree. This Court's construction of the consent decree does not make impossible the existence of other agreements between Smith and Anchor.

## C. Anchor's Motion to File a Surreply

■ Still left for discussion is Anchor's motion to file a surreply in this case. Smith, in its reply brief in support of its motion for a construal order, makes the point that "[w]hile Smith is not aware of any contracts, agreements or obligation to supply anchor with barite other than the supply agreement imposed by the Modified Final Judgment, it will anxiously await the filing of an Amended Complaint in the Oklahoma [litigation]." (Reply Br. at 6.). Anchor seizes on this statement and argues that it needs a supplemental memorandum to introduce two contracts executed in 1996 and "explain the relevance of these agreements to the issues now pending before this Court."

■ "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,* 238 F.Supp.2d 270, 276–77 (D.D.C.2002); *see also Robinson v. The Detroit News, Inc.,* 211 F.Supp.2d 101, 112 (D.D.C.2002) ("The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply."). The matter must be truly new. *Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 61 (D.D.C.2001) ("Because this contention does not involve a new matter but rather an alleged mischaracterization, the court denies the plaintiff's motion.").

The discussion of agreements separate from the Stipulated Divestiture Agreement is hardly new to Smith's reply: it began with Smith's first brief. Smith noted that it has, in the past, privately contracted with Anchor to sell ground barite ore. (Mot. for Order at 6.). This is not in dispute. In its opposition brief, Anchor notes this so-called "admission" by Smith; however, it never makes mention of specific agreements or explains the relevance of any private agreement to Smith's motion. (Opp. at 6.). This was Anchor's opportunity to make its case regarding the separate agreements. That Anchor failed to put forth its best case in its opposition is not grounds for permitting a surreply. Smith's proffer, in its reply brief, of unawareness of current obligations to supply ore to Anchor was made in the context of a discussion of the Oklahoma litigation, in which Anchor's complaint references the Stipulated Divestiture Agreement 55 times yet never mentions either of the 1996 agreements.

Anchor "took a litigation gamble," *Pogue*, 238 F.Supp.2d at 277, by not fully addressing the separate agreements in its opposition brief, and it lost. Anchor's motion for leave to file a surreply must be denied.

## III. CONCLUSION

For the foregoing reasons, the Court denies Anchor's motion for leave to file a surreply and grants Smith's motion for a construal order. An order consistent with this opinion shall issue this date.

### ORDER

Upon consideration of the several motions relating to Smith International, Inc.'s motion [99] for an order construing continuing obligations under the Modified Final Judgment, and consistent with a Memorandum Opinion issued in this case this date, it is hereby:

ORDERED that Anchor Drilling Fluids U.S.A., Inc.'s motion [101] for leave to file response to Smith International's motion for order construing is GRANTED.

ORDERED that Anchor Drilling Fluids U.S.A., Inc.'s motion [102] for leave to file a surreply is DENIED.

ORDERED that Smith International, Inc.'s motion [106] for oral argument is DENIED.

ORDERED that Smith International, Inc.'s motion [99] for a construal order is GRANTED.

ORDERED that Paragraph II.G of the Stipulated Divestiture Agreement of the Modified Final Judgment entered in this case on September 19, 1996 shall be construed as follows:

1. The term "crude barite ore" shall not include ground barite ore.

2. The paragraph only obliges Smith International, Inc. to supply Anchor Drilling Fluids U.S.A., Inc. crude barite ore in the specified manner; it does not oblige Smith International to process or deliver said crude barite ore.

SO ORDERED.