Michelle FERGUSON, Plaintiff,

v.

**LOCAL 689, AMALGAMATED TRANSIT UNION, et al., Defendants.**

Civil Action No. 08–1030 (JDB).

United States District Court, District of Columbia.

June 19, 2009.

56

Patricia Elizabeth Ricks, Washington, DC, for Plaintiff.

Douglas Taylor, Gromfine & Taylor, P.C., Alexandria, VA, Gerard Joseph Stief, WMATA, Washington, DC, for Defendants.

### MEMORANDUM OPINION

JOHN D. BATES, District Judge.

▪ Plaintiff Michelle Ferguson brings this action against defendants Washington Metropolitan Area Transit Authority ("WMATA") and Local 689, Amalgamated Transit Union and three of its employees, sued in their official capacities only (together "Local 689"). WMATA discharged Ferguson from her position as a bus driver after her bus hit and killed a pedestrian. Ferguson alleges that WMATA discharged her without sufficient cause, in violation of its collective bargaining agreement with Local 689. She further alleges that Local 689 breached its duty of fair representation under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,

by handling the grievance proceedings following her discharge in an arbitrary and perfunctory manner. Ferguson also asserts claims against the defendants for intentional infliction of emotional distress ("IIED"). Currently before the Court are motions to dismiss from WMATA and Local 689. For the reasons discussed below, WMATA's motion to dismiss will be granted and Local 689's motion to dismiss will be denied.[1]

### BACKGROUND

WMATA employed Ferguson as a bus driver from September 6, 2002 until June 29, 2006. Am. Compl. ¶¶ 6, 10. During this time, Ferguson was covered by the terms of the collective bargaining agreement between WMATA and Local 689. *Id.* ¶ 7. On June 8, 2006, Ferguson's bus hit a pedestrian, who later died from injuries sustained in the collision. *Id.* ¶ 9. Soon thereafter, WMATA discharged Ferguson after determining that the accident was "major" and "preventable," and that the accident resulted from her gross negligence, reckless conduct, and disregard for the basic principles of bus safety. *Id.* ¶¶ 10–11. Ferguson contends that WMATA knew that the allegations against her were false and conspired with Local 689 to prevent her from adequately defending herself against these allegations. *Id.* ¶¶ 25–26.

On July 10, 2006, Ferguson filed a grievance protesting her discharge. *Id.* ¶ 14. WMATA subsequently denied Ferguson's grievance at each of the four required administrative steps. *Id.* ¶ 16. At all times during the grievance proceedings, defendant Wayne Garland, an employee of

---

1. Ferguson's third claim for relief (Count III) appears to be a separate claim for punitive damages. Am. Compl. ¶¶ 29–30. Punitive damages are a remedy, not a freestanding ground for relief. *Mazloum v. D.C. Metro. Police Dep't,* 522 F.Supp.2d 24, 42 (D.D.C.2007). Therefore, Count III will be dismissed.

Local 689, represented Ferguson. *Id.* ¶¶ 3, 15. On February 9, 2007, after the 60–day window within which to file an arbitration request had lapsed, Local 689 requested arbitration of Ferguson's grievance. *Id.* ¶¶ 18–19. On November 6, 2007, the Board of Arbitration declined to hear the merits of Ferguson's grievance because Local 689 filed the request in an untimely manner. *Id.* ¶ 20.

Ferguson alleges that until about August 23, 2008, she believed that she would return to work for WMATA. Ferguson Aff. ¶ 3. She identified three occasions on which she asked WMATA attorneys when she would be able to return to work. *Id.* ¶¶ 8, 10, 12. First, a WMATA attorney told Ferguson that WMATA was "going to do one thing at a time," indicating that WMATA would address Ferguson's unemployment benefits before determining whether Ferguson would return to work. *Id.* ¶ 8. Next, WMATA attorneys told Ferguson that WMATA "wanted to get everything proven first and ... get things on paper," which Ferguson took to mean resolving the underlying lawsuit brought by the pedestrian's family before addressing her inquiry. *Id.* ¶ 10. Finally, after WMATA failed to return several of Ferguson's phone calls, a WMATA attorney told Ferguson that she should "contact the union." *Id.* ¶ 12. After her discharge, Ferguson claims that she was initially unable to receive unemployment benefits because of WMATA's determination that her gross negligence contributed to the bus accident. *Id.* ¶ 4. Later, Ferguson says that a WMATA attorney told her that WMATA was "tired of fighting" and would grant her unemployment benefits. *Id.* ¶ 8.

Ferguson filed a *pro se* complaint against Local 689 in the Superior Court of the District of Columbia on May 5, 2008 and Local 689 removed the case to this Court soon thereafter. On December 1, 2008, Ferguson, with the help of counsel, filed a motion for leave to amend the complaint to add WMATA as a defendant. That motion was granted on December 17, 2008. WMATA then filed a motion to dismiss on January 9, 2009. WMATA argues, primarily, that the claims against it should be dismissed because it was added to the suit after the applicable statute of limitations had run. WMATA Mot. Dismiss at 1. Local 689 filed a motion to dismiss on January 15, 2009 in which it contends that the claims against it should be dismissed because Ferguson fails to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Local 689 Answer & Mot. Dismiss at 8.

## LEGAL STANDARD

All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955; *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. ——, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955); *Atherton v. District of Columbia Office of the Mayor,* 567 F.3d 672, 681 (D.C.Cir.2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." *Id.* at 1950–51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979); *see also Erickson,* 127 S.Ct. at 2200 (citing *Twombly,* 127 S.Ct. at 1965). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Iqbal,* 129 S.Ct. at 1949–50 (internal quotation marks omitted); *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 n. 4 (D.C.Cir.2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

### *ANALYSIS*

### I. WMATA's Motion to Dismiss

■ With respect to WMATA, the core of Count I is a claim for breach of a collective bargaining agreement. Am. Compl. ¶ 10. This claim is brought pursuant to section 301 of the Labor Management Relations Act, which governs suits for the violation of contracts between employers and labor unions. 29 U.S.C. § 185. Count I also contains a claim against Local 689 for breach of its duty of fair representation—a type of claim "which is implied under the scheme of the National Labor Relations Act." *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Together, then, Count I raises a "hybrid § 301/fair representation claim," which is subject to the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello,* 462 U.S. at 154–55, 165, 103 S.Ct. 2281; *Simmons v. Howard Univ.,* 157 F.3d 914, 916 (D.C.Cir.1998). Section 10(b)'s statute of limitations begins to run when the claimant discovers or should have discovered the acts constituting the alleged violation. *Simmons,* 157 F.3d at 916. Neither party disputes that Ferguson added WMATA as a defendant more than six months after the date on which the statute of limitations began to run—*i.e.,* when the Board of Arbitration denied her request for arbitration in No-

vember 2007. WMATA Reply at 2. WMATA argues, therefore, that because it was made a party after the statute of limitations had run, the hybrid claim (Count I) is time-barred as to WMATA and must be dismissed. *Id.* at 1. It also asserts that Ferguson's IIED claim (Count II) must be dismissed because WMATA is immune from this type of tort claim. *Id.* at 3. In response, Ferguson contends that her claims against WMATA are timely because they relate back to the date of the original complaint. Pl.'s Opp'n to WMATA Mot. at 3. Alternatively, she asserts that the Court should equitably toll the statute of limitations. Pl.'s Surreply to WMATA Mot. at 1–3. She also argues that her IIED claim does not fall within WMATA's tort immunity. Pl.'s Opp'n to WMATA Mot. at 7–8.

## A. Statute of Limitations

■ Ferguson first contends that the claims against WMATA in her amended complaint relate back to the date of her original complaint because they arise from the same "conduct, transaction, or occurrence." *Id.* at 3. Thus, according to Ferguson, her claims against WMATA were timely filed. *Id.* WMATA responds that relation back does not apply because Ferguson cannot meet the additional requirements of notice and mistaken identity set forth in Fed.R.Civ.P. 15(c)(1)(C). WMATA Reply at 3. The Court agrees with WMATA that because the requirement of mistaken identity is not met, the claims against WMATA in the amended complaint do not relate back and hence are time-barred.

■ When an amendment to a pleading adds a party, the amendment relates back to the date of the original complaint if it asserts a claim that arises from the same conduct, transaction, or occurrence set forth in the original complaint, and "the party to be brought in by amendment (A)

has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." *Rendall–Speranza v. Nassim,* 107 F.3d 913, 917 (D.C.Cir.1997); *see* Fed. R.Civ.P. 15(c)(1). This Circuit reads the "mistaken identity" requirement in a straightforward manner, and recognizes that Rule 15(c)(1)(C) is a name-correcting amendment that is intended to avoid the harsh consequences of a mistake. *Rendall–Speranza,* 107 F.3d at 918; *see also* Fed.R.Civ.P. 15 advisory committee note (acknowledging that Rule 15(c)(1)(C) deals with "the problem of a misnamed defendant"). Thus, a potential defendant is entitled to the repose afforded by a statute of limitations unless it is apparent that the defendant was left out of the suit as the result of a "mere slip of the pen." *Rendall–Speranza,* 107 F.3d at 918.

■ Ferguson did not delay in adding WMATA as a party due to mistaken identity. As WMATA correctly asserts, Ferguson was obviously aware of the identity of her employer at the time she filed the original complaint. WMATA Reply at 2. Moreover, Ferguson's original complaint contains multiple references to WMATA, yet it did not name WMATA as a party. Compl. ¶ 1. Hence, Ferguson's failure to name WMATA as a defendant in the original complaint could not have been the result of an accidental "slip of the pen." Consequently, the claims against WMATA do not relate back to the original complaint and should be dismissed pursuant to section 10(b)'s six-month statute of limitations, unless Ferguson can identify an equitable basis why the statute of limitations

should not be dispositive.[2]

## B. Equitable Estoppel and Equitable Tolling

 Ferguson argues that the Court should equitably toll the statute of limitations to allow her to proceed with her suit against WMATA.[3] Pl.'s Surreply to WMATA Mot. at 1–3. Ferguson contends that because WMATA led her to believe that she would be rehired, it should be estopped from asserting the statute of limitations as a defense. *Id.* at 2–3. WMATA responds that equitable estoppel is only applicable in exceptional circumstances, which are absent here.[4] *See* WMATA Reply to Pl.'s Surreply at 3–4. Courts will only equitably toll a statute of limitations in extraordinary circumstances. *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988). In general, courts may equitably toll a statute of limitations where " 'a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory pe-

riod until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.' " *Id.* (quoting *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

 The factual allegations set forth in Ferguson's affidavit simply do not demonstrate that any of these extraordinary circumstances were present here. In this case, the issue of affirmative misconduct is most relevant. *See* Pl.'s Surreply to WMATA Mot. at 2. Ferguson alleges that she repeatedly asked WMATA attorneys when she would be able to return to work. Ferguson Aff. ¶¶ 8, 10, 12. A WMATA attorney told Ferguson that WMATA was "going to do one thing at a time," indicating that WMATA would address Ferguson's unemployment benefits before determining whether Ferguson would return to work. *Id.* ¶ 8. Then, WMATA attorneys

---

2. Ferguson argues that because she was proceeding *pro se* at the time she filed her original complaint, she is entitled to a liberal construction of that complaint, which would allow her claims against WMATA to go forward regardless of the relation back rule set forth in Rule 15(c). Pl.'s Opp'n to WMATA Mot. at 6–7. Although it is true that courts liberally construe *pro se* filings, *see Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999), a case in which a plaintiff fails to meet a statutory deadline but attributes it to her *pro se* status is not one in which a court should toll the statute of limitations. *See United States v. Lawson,* 608 F.Supp.2d 58, 62 (D.D.C.2009).

3. In her surreply, Ferguson addresses the distinct but similar doctrines of equitable estoppel and equitable tolling. Pl.'s Surreply to WMATA Mot. at 1–3; *see Dove v. Wash. Metro. Area Transit Auth.,* 402 F.Supp.2d 91, 97 (D.D.C.2005). Equitable estoppel precludes a defendant from raising the statute of limita-

tions as a defense because of his own inequitable conduct, such as when a defendant tells a claimant that it will not assert the statute of limitations. *Dove,* 402 F.Supp.2d at 97. Equitable tolling applies when a plaintiff is unable to obtain information vital to her claim, despite exercising due diligence. *Id.* Although the doctrine of equitable estoppel is more relevant to the facts of this case, the Court considered both doctrines in determining whether equity requires that Ferguson be afforded relief from the statute of limitations.

4. WMATA also argues that Ferguson's surreply should be disregarded because surreplies are not permitted by this Court's rules. WMATA Reply to Pl.'s Surreply at 2; *see* Local Civ. R. 7. It is well-established that "[a] surreply may be filed only by leave of Court." *United States v. Baroid Corp.,* 346 F.Supp.2d 138, 143 (D.D.C.2004). Although Ferguson did not seek leave to file a surreply, the Court will, nevertheless, consider it in resolving WMATA's motion.

told Ferguson that WMATA "wanted to get everything proven first and ... get things on paper," which Ferguson took to mean resolving the underlying lawsuit brought by the pedestrian's family before addressing Ferguson's inquiry. *Id.* ¶ 10. Finally, after WMATA failed to return several of Ferguson's phone calls, a WMATA attorney told Ferguson that she should "contact the union." *Id.* ¶ 12. At most, these allegations show that WMATA was not entirely forthcoming with Ferguson following her discharge. Such actions, however, do not rise to the level of affirmative misconduct. *See, e.g., Delaney v. District of Columbia,* 612 F.Supp.2d 38, 43 (D.D.C.2009) ("Failure to return phone calls does not constitute affirmative misconduct that would give rise to equitable tolling."); *Dove,* 402 F.Supp.2d at 97 ("Absent ... a showing [that the defendant intentionally misled the plaintiff,] the plaintiff's claim [for equitable tolling] fails."). Because Ferguson's allegations do not meet the high standard required for a court to equitably toll the statute of limitations, the Court concludes that WMATA should not be estopped from asserting the statute of limitations as a defense and, accordingly, Count I of the amended complaint will be dismissed as to WMATA.

## C. Intentional Infliction of Emotional Distress

 Ferguson also asserts an IIED claim against WMATA. Am. Compl. ¶ 27. WMATA contends that it is immune from Ferguson's IIED claim.[5] WMATA Reply at 3–4. In response, Ferguson argues that because WMATA committed this tort dur-

ing the performance of a proprietary, rather than discretionary, function, WMATA's actions are not subject to its tort immunity. *See* Pl.'s Opp'n to WMATA Mot. at 8.

Under the WMATA Compact, WMATA waives its immunity with respect to torts committed in the conduct of any proprietary function, while retaining immunity for torts committed in the performance of governmental functions. *Beebe v. Wash. Metro. Area Transit Auth.,* 129 F.3d 1283, 1287 (D.C.Cir.1997). Courts often distinguish between proprietary and governmental functions by defining "discretionary" actions as governmental, and thus within the scope of WMATA's tort immunity, while leaving "ministerial" actions outside the scope of this immunity. *Id.* This Circuit has held that employment decisions such as the "hiring, training, and supervising of WMATA employees" are discretionary activities that fall within WMATA's tort immunity. *Id.* (citing *Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F.3d 1207, 1217 (D.C.Cir.1997)); *see also Chester v. Wash. Metro. Area Transit Auth.,* 335 F.Supp.2d 57, 61 (D.D.C.2004) (holding that the WMATA Compact provides the defendant with immunity from a wrongful termination tort claim). Because WMATA's decision to discharge Ferguson is a discretionary activity, Ferguson's IIED claim in Count II based on that decision falls squarely within WMATA's immunity from tort claims under the WMATA Compact. Therefore, the Court will dismiss Ferguson's IIED claim against WMATA (Count II). Hence, all claims against WMATA will be dismissed and WMATA will be dismissed from this case as a party defendant.

---

**5.** WMATA also argues that Ferguson's IIED claim is not separate from her other claims. WMATA Reply at 3. However, the Court finds that the IIED claim (Count II) is distinct from

Ferguson's hybrid section 301/fair representation claim (Count I) and must be evaluated separately.

## II. Local 689's Motion to Dismiss

Defendant Local 689 argues that the amended complaint fails to state a claim upon which relief can be granted, and that Ferguson's dispute regarding her discharge has already been resolved in a final and binding arbitration.[6] Local 689 Answer & Mot. Dismiss at 8. In response, Ferguson points to specific allegations in her complaint that she believes state a claim against Local 689 for breach of its duty of fair representation. Pl.'s Opp'n to Local 689 Mot. ¶¶ 3–5, 7, 9. The Court finds that Ferguson has alleged sufficient facts to go forward with her claims against Local 689 at the motion to dismiss stage.

As discussed above, Count I is a hybrid section 301/fair representation claim. The latter part of that claim is a breach of duty of fair representation claim against Local 689. The Supreme Court has recognized that such claims are implied under the National Labor Relations Act because an employee subject to a collective bargaining agreement is bound by the result of the grievance and arbitration procedures set forth in that agreement unless the union represents the employee "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello,* 462 U.S. at 163–64, 103 S.Ct. 2281. Ferguson alleges that Local 689 represented her in just such a manner. Specifically, she alleges that the union failed to thoroughly investigate her accident, failed to contact witnesses to the accident, and requested arbitration of the grievance protesting her discharge in an untimely fashion. Am. Compl. ¶¶ 12, 19–21. Assuming the facts in Ferguson's amended complaint to be true, and drawing all reasonable inferences in her favor, as the Court must, *see Scheuer,* 416 U.S. at 236, 94 S.Ct.

1683, it is clear that Ferguson's complaint states a claim for breach of duty of fair representation against Local 689 "that is plausible on its face," *Iqbal,* 129 S.Ct. at 1949. As alleged, the facts would appear to demonstrate that Local 689 did act in a "discriminatory, dishonest, arbitrary, or perfunctory fashion" in representing Ferguson during the grievance process. Accordingly, the Court will deny Local 689's motion to dismiss and all remaining claims against the union, and its three employees who are also named defendants, will proceed.

### *CONCLUSION*

For the foregoing reasons, the Court will dismiss Count III of the amended complaint, it will grant WMATA's motion to dismiss and it will deny Local 689's motion to dismiss. WMATA will be dismissed as a party to this action, but Ferguson will be allowed to proceed with Counts I and II against Local 689. A separate Order accompanies this Memorandum Opinion.

---

**6.** Count II of the amended complaint also asserts an IIED claim against Local 689. Am. Compl. ¶ 27. Because Local 689's motion to dismiss and Ferguson's opposition to that motion do not address this claim, the Court will not consider it at this time.