UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1685**

GREENBELT VENTURES, LLC,

             Plaintiff - Appellant,

      and

METROLAND DEVELOPERS, LLC,

             Plaintiff,

      v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,

             Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District
Judge. (8:10-cv-00157-AW)

Argued:  March 23, 2012                    Decided:  May 11, 2012

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David M. Sheehan, THOMAS & LIBOWITZ, PA, Baltimore,
Maryland, for Appellant.  Bruce P. Heppen, WASHINGTON
METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for
Appellee. **ON BRIEF:** Carol B. O'Keeffe, General Counsel, Gerard
J. Stief, Senior Associate General Counsel, WASHINGTON

METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arises from a failed real estate transaction concerning land near a metro station in Prince George's County, Maryland. After rejecting plaintiff's tort, contract, and quasi-contract claims, the district court dismissed the case. For the reasons that follow, we affirm.

I.

The Washington Metropolitan Area Transit Authority ("WMATA") -- a government agency created by an Interstate Compact (the "Compact") between Maryland, Virginia, and the District of Columbia -- is responsible for the construction and operation of a transit system for the Washington, D.C. metropolitan area. WMATA leases and sells real property located at or near its metro stations for construction of transit-oriented development projects. Under the Joint Development Policies and Guidelines adopted by the WMATA Board of Directors, the Board alone is responsible for approving developer selection and the terms of contracts with the designated developer.

WMATA owns 78 acres of real estate in Prince George's County near the Greenbelt Metro Station. On December 21, 2000, WMATA entered into a Joint Development Agreement (the "JDA") with Metroland Developers, LLC to develop the Greenbelt property. The JDA required WMATA to sell the property to

3

Metroland for $6.4 million, contingent on Metroland's satisfaction of milestone dates and closing conditions, as well as its construction of replacement parking facilities. The JDA expressly provided that Metroland could not assign its rights under the agreement without prior written approval from WMATA, but that "approval shall not be unreasonably withheld."

Greenbelt Ventures, LLC ("GV") is a Delaware corporation established for the purpose of participating in the Greenbelt project. It was not a party to the JDA. In 2005, GV and Metroland reached an agreement under which GV would acquire a controlling interest in Metroland. GV then asked WMATA to approve the acquisition and the assignment of the JDA. According to GV, WMATA orally represented on several occasions that it had already approved the change in Metroland's ownership and that written approval was forthcoming. In reliance on these statements, GV asserts, it expended time, effort, and money in support of the development plans.

On September 1, 2006, GV alleges, WMATA informed GV that written approval had not yet been granted and would require the Board's endorsement of an amended JDA. According to GV, WMATA conditioned approval of the assignment on an increase in the purchase price of the Greenbelt property, along with additional concessions from GV. From February 2007 until April 2008, GV protested to various government officials that WMATA

4

was unreasonably withholding consent for the transfer of ownership.

WMATA staff then negotiated the terms of an amended contract with both Metroland and GV, and the parties agreed to a Revised JDA in June 2008. The Revised JDA was placed on the Board's agenda for consideration at its July 24, 2008 meeting. However, it was later pulled from that agenda and scheduled for September 2008, only to be removed again after the <u>Washington Post</u> published an article indicating that the FBI was investigating corruption in the project. Since then, no action has been taken to adopt the Revised JDA. Following the termination of Metroland's agreement with GV, Metroland and WMATA entered into an amended JDA, which was approved by the WMATA Board on March 24, 2011 and executed on May 2, 2011.

GV sued WMATA for breach of contract, fraud, breach of fiduciary duty, tortious interference with contract, interference with prospective advantage, promissory estoppel, and unjust enrichment. On August 31, 2010, the district court granted WMATA's motion to dismiss as to the tort, promissory estoppel, and unjust enrichment claims, finding that they were barred by WMATA's sovereign immunity, but allowed the contract claim to proceed. The court reasoned that equitable estoppel and part performance of the JDA constituted exceptions to the Statute of Frauds. WMATA moved for reconsideration, claiming

5

that its sovereign immunity precluded GV's defenses to the Statute of Frauds. On June 1, 2011, the district court agreed with WMATA, dismissing GV's breach of contract claim and ordering the case to be closed. This appeal followed.

## II.

### A.

GV raises a number of arguments in this appeal. We begin with GV's breach of contract claim. Relying on alleged oral statements by WMATA staff, GV argues that "WMATA consented to [its] acquisition of the ownership interest in Metroland . . . ." Appellant's Br. at 5. However, the JDA -- a contract between WMATA and Metroland -- makes clear that it is not assignable to a third party "without WMATA's prior <u>written</u> approval" (emphasis added). It further provides that "[w]henever this Agreement . . . requires consent or approval, such consent or approval shall . . . not be effective unless in writing," and that the Agreement "shall not be amended or modified in any manner except by an instrument in writing executed by the parties as an Amendment."

It is not surprising that the JDA requires any assignments to be in writing. The Greenbelt project involves millions of dollars in renovations, and contractual relationships of this magnitude and complexity are normally

6

governed by written contracts, not oral agreements. Written instruments allow parties to avoid the potential evidentiary problems involved in establishing the terms of an oral agreement. The JDA thus gives WMATA discretion to withhold endorsement of potential assignees -- allowing it to protect the public fisc, maintain quality controls, and safeguard against corruption -- and the written approval requirement ensures that WMATA has in fact approved an assignment.

As GV does not dispute, WMATA never provided it with written approval of the proposed assignment of the JDA. WMATA staff negotiated with Metroland and GV in order to resolve the terms by which the proposed assignment would be submitted for approval to the WMATA Board, but this item was subsequently removed from the Board's agenda, and it has never been considered by the Board. Because WMATA never gave written approval for the assignment of Metroland's ownership interest, GV was never a party to any contract with WMATA.

Moreover, under WMATA's Joint Development Policies and Guidelines, the Board itself -- and not WMATA staff -- is responsible for approving developer selection and the terms of final contracts. Thus, even accepting GV's allegations that WMATA staff orally agreed to assign the JDA to GV, those staff members did not have the authority to approve such an assignment. GV's failure to obtain written approval of the

7

proposed assignment from the Board itself defeats its breach of contract claim.

B.

GV's contract claim is further barred by the Maryland Statute of Frauds. Under Maryland law, which applies to this diversity case, "No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him." Md. Code Ann., Real Prop. § 5-104. Because any contractual relationship between WMATA and GV involves the sale of an "interest in or concerning land," and because GV has failed to allege the existence of any written agreement signed by WMATA, its breach of contract claim fails under the Statute of Frauds.[*]

---

[*] GV asserts that it should have been allowed to pursue discovery in order to locate a writing that would satisfy the Statute of Frauds. It speculates that such a writing must exist, but provides no colorable basis for this conclusion. Consequently, the district court properly denied GV's discovery request, which is nothing but a fishing expedition. See, e.g., Susko v. City of Weirton, No. 5:09-CV-1, 2011 WL 98557, at *4 (N.D. W. Va. Jan. 12, 2011) (noting that "mere speculation that documents exist is not a sound basis" for permitting discovery to go forward).

8

GV argues that its claim is not governed by the Statute of Frauds because "the JDA and the Revised JDA are simply agreements concerning the ownership percentages of the entities, not the direct transacting of transfers of the real property." Appellant's Br. at 25-26. However, this characterization is at odds with GV's own pleading, which describes the benefit of its bargain with WMATA as "the right to obtain legal title to the Property," J.A. 41, and with the language of the JDA itself, which states, "Subject to the terms and conditions set forth in this Development Agreement, WMATA agrees to sell and convey to [Metroland], and [Metroland] agrees to buy from WMATA, the Property," J.A. 67. Moreover, GV is seeking a controlling interest in Metroland, whose chief asset is the potential interest in the realty. As contracts for the sale of 78 acres of real estate, the JDA and Revised JDA plainly involve the disposition of an "interest in or concerning land," and therefore fall within the scope of the Statute of Frauds.

GV further contends that the doctrines of part performance and promissory estoppel bar WMATA's Statute of Frauds defense. Under certain conditions, part performance and promissory estoppel allow one party to estop another from invoking the Statute of Frauds. See Harrington v. M.C. Fuhrman & Assocs., LLC, No. WDQ-10-1258, 2011 WL 90234, at *2 (D. Md. Jan. 10, 2011); Kline v. Lightman, 221 A.2d 675, 684 (Md. 1966)

9

(citations omitted). The contracts here fall within these exceptions to the Statute of Frauds, GV argues, due to the time, energy, and money that it devoted to the Greenbelt project based on WMATA's oral representations.

In response, WMATA argues that its sovereign immunity prevents GV from asserting the exceptions in this case. The Compact, which was adopted by Maryland, Virginia, and the District of Columbia, grants WMATA the same privileges as that of a state, including sovereign immunity. See, e.g., Delon Hampton & Assocs. v. WMATA, 943 F.2d 355, 359 (4th Cir. 1991). Thus, WMATA is generally immune from suit unless it has waived its immunity.

According to GV, however, WMATA broadly waived its immunity through § 80 of the Compact, which provides:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority . . . .

Md. Code Ann., Transp. § 10-204(80). GV asserts that "the express terms of the WMATA Compact incorporate both the Statute of Frauds and the appellate decisional law interpreting and applying it, including the case law relating to the exceptions

10

of 'part performance' and 'estoppel.'" Appellant's Br. at 30. Thus, GV claims, "[t]here are simply no grounds for WMATA to invoke the Statute of Frauds as a defense to Greenbelt's contract action and then claim the cloak of sovereign immunity to the exceptions to the Statute of Frauds under Maryland decisional law." Id.

GV's argument misfires. GV has failed to provide any specific basis for concluding that WMATA waived its immunity as to part performance and estoppel claims in § 80. A waiver of sovereign immunity, like that contained in § 80, must be "'unequivocally expressed' in the statutory text" and "strictly construed, in terms of its scope, in favor of the sovereign." Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). It is anything but clear that WMATA has waived its sovereign immunity as to part performance and estoppel claims, see Martin v. WMATA, 273 F. Supp. 2d 114, 119 (D.D.C. 2003), but GV could not recover on these exceptions to the Statute of Frauds in any event. For "[e]quitable estoppel against the government is strongly disfavored, if not outright disallowed . . . ." Volvo Trucks of N. Am., Inc. v. United States, 367 F.3d 204, 211 (4th Cir. 2004). In Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), for instance, the Supreme Court stated, "we have reversed every finding of estoppel [against the government] that we have reviewed." Id. at 422. If estoppel is ever

11

allowed against a government agency, it is only available where a government agent engages in "affirmative and egregious misconduct" that goes beyond mere "unprofessional and misleading conduct." Kone v. Ashcroft, No. PJM 04-1996, 2004 WL 2944186, at *2 (D. Md. Nov. 16, 2004); see also Dawkins v. Witt, 318 F.3d 606, 611 (4th Cir. 2003).

Here, GV does not identify any "affirmative and egregious misconduct" on WMATA's part. WMATA's assertion of its contractual right to withhold approval of an assignment cannot be characterized as misconduct. At worst, WMATA declared that it would approve the proposed assignment and that written approval would be forthcoming. As the district court concluded, "while Plaintiff may have offered facts to demonstrate that Defendant's conduct was deceptive, there is certainly no affirmative misconduct that has been alleged." Consequently, GV cannot estop WMATA from invoking the Maryland Statute of Frauds, which bars GV's breach of contract claim.

C.

Nor can GV be labeled a third-party beneficiary of the contract between Metroland and WMATA. Under Maryland law, "a third party beneficiary contract arises when two parties enter into an agreement with the intent to confer a direct benefit on a third party, allowing that third party to sue on the contract

12

despite his or her lack of privity." Lovell Land, Inc. v. State Highway Admin., 952 A.2d 414, 429 (Md. Ct. Spec. App. 2008), rev'd, 969 A.2d 284 (Md. 2009) (reversing the lower court's decision but not its statement of the law). "An incidental beneficiary . . . has no rights against the promisee or promisor," and a third-party beneficiary "must show that the parties to the contract clearly intended that the third party benefit from it." Parlette v. Parlette, 596 A.2d 665, 670 (Md. Ct. Spec. App. 1991). GV has not made such a showing. As the district court noted, GV's complaint provides no indication that Metroland and WMATA entered into the JDA in order to benefit GV. In fact, the complaint signals that GV was not even involved with the Greenbelt project until a few years after Metroland and WMATA entered into the JDA in December 2000. Thus, GV's third-party beneficiary claim must fail.

III.

A.

Faced with the defeat of its contract claims, GV presents arguments based on a variety of other theories. First, GV attempts to transmute its contract claims into tort claims by alleging fraud, breach of fiduciary duty, interference with contract, and interference with prospective advantage. But a breach of contract is not a tort, and there is nothing tortious

13

about asserting one's contractual rights.  Thus, tort law does not govern here.

Even if it did, however, these tort claims are barred by WMATA's sovereign immunity.  To determine whether a given WMATA activity qualifies for immunity requires a two-step analysis.  <u>James v. WMATA</u>, 649 F. Supp. 2d 424, 430 (D. Md. 2009) (citing <u>Smith v. WMATA</u>, 290 F.3d 201, 207 (4th Cir. 2002)).  "First, . . . if [WMATA] is engaged in a quintessential governmental function, its activities fall within the scope of its immunity."  <u>Id.</u>  "If [WMATA] is not engaged in such a governmental function" -- as defendant concedes is the case here -- a court must "determine whether the challenged activity is discretionary or ministerial."  <u>Id.</u>  "'Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions.  It is not discretionary [i.e., ministerial] if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required.'"  <u>Monument Realty LLC v. WMATA</u>, 535 F. Supp. 2d 60, 76 (D.D.C. 2008) (citation omitted).  Where the activity is discretionary, WMATA is immune from claims affecting governmental functions.  <u>James</u>, 649 F. Supp. 2d at 430.

In deciding whether an activity is discretionary, the court must first look to whether a statute, regulation, or policy specifically prescribes a course of action for WMATA

14

staff to follow.  Monument Realty, 535 F. Supp. 2d at 76.  Here, no such statute, regulation, or policy exists.  GV disagrees, asserting that the JDA -- which was negotiated in accordance with WMATA's Procurement Procedures Manual and Section 12 of the Compact -- is equivalent to a regulation or policy that makes WMATA's act of withholding consent ministerial and not discretionary.  Citing Section 20.02 of the JDA, which prohibits WMATA from "unreasonably" withholding consent to an assignment, GV asserts that "WMATA had no discretion to simply withhold written approval for years."  Appellant's Br. at 46.  However, GV's argument is directly contradicted by Monument Realty, in which the court held that "an agreement is not the equivalent of a statute, regulation or policy," and that no identifiable provision of the Compact "specifically prescribe[s] WMATA's course of conduct while engaging in negotiations for the sale of real estate."  535 F. Supp. 2d at 78.  Moreover, the fact that Section 20.02 prevents WMATA from "unreasonably" withholding consent suggests that WMATA might have legitimate reasons for doing so and that it retains discretion to decide who can be trusted to develop public property.  Thus, no statute, regulation, or policy compels WMATA to follow a particular course of action here.

In the absence of a prescribed course of action, WMATA is entitled to exercise discretion to the extent that its

15

decision is grounded in social, economic, or political goals. Monument Realty, 535 F. Supp. 2d at 76-77. As the district court concluded, and as GV does not dispute on appeal, such was the case here. The Greenbelt project "involves the 'interests of many stakeholders and governments, representing millions of dollars and tens of thousands of people with a stake in transit oriented development' who will be affected by the design elements of the plan," and WMATA must "weigh all of these social and economic considerations in the selection of the developer who will be responsible for completing the Project." Greenbelt Ventures, LLC v. WMATA, No. AW-10-00157, 2010 WL 3469957, at *6 (D. Md. 2010). Accordingly, given that GV's tort claims are based on discretionary acts of WMATA and are grounded in social, economic, and policy considerations, they are barred by WMATA's sovereign immunity.

IV.

We have reviewed with care GV's claims which we find to be without merit. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

16